RECEIVED IN
COURT OF CRIMINAL APPEALS

January 14, 2015

ABEL ACOSTA, CLERK

PD-0419-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/14/2015 11:22:28 AM
Accepted 1/14/2015 11:57:27 AM
ABEL ACOSTA
CLERK

**No. PD-0419-14**

IN THE COURT OF
CRIMINAL APPEALS OF TEXAS

ORLANDO SALINAS, Appellant

v.

THE STATE OF TEXAS, Appellee

Petition for discretionary review from Cause No. 14-12-00378-CR from the Court of Appeals for the Fourteenth District of Texas at Houston

## BRIEF OF AMICUS CURIAE TEXAS FAIR DEFENSE PROJECT

## IN SUPPORT OF APPELLANT ORLANDO SALINAS

**Emily Gerrick**
Texas Bar No. 24092417
egerrick@fairdefense.org
TEXAS FAIR DEFENSE PROJECT
510 South Congress Avenue, Suite 208
Austin, Texas 78704
Tel. 512-879-1189
Fax 512-637-5224

Attorney for Amicus Curiae
Texas Fair Defense Project

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................. iii

IDENTITY AND INTEREST OF AMICUS CURIAE ............................................v

SUMMARY OF ARGUMENT...........................................................................1

ARGUMENT ....................................................................................................2

I.   Valid Court Costs Recoup the Judicial Resources Expended in the Trial of the Defendant's Case...............................................................................2

II.  With Respect to all Twelve Challenged Accounts, Money from the Consolidated Court Cost Funds Expenditures Unrelated to the Judicial Resources Expended in the Trial of the Defendant's Case .............................3

   A.   Money Formerly Deposited into Account 5011, Abused Children's Counseling, Now Deposited into Account 1, Unappropriated General Revenue ..................................................................................3

   B.   Money Deposited into Account 5012, Crime Stoppers Assistance ....4

   C.   Money Deposited into Account 5013, Breath Alcohol Testing ...........5

   D.   Money Deposited into Account 581, Bill Blackwood Law Enforcement Management Institute .....................................................6

   E.   Money Deposited into Account 116, Law Enforcement Officers Standards and Education ....................................................................8

   F.   Money Deposited into Account 107, Comprehensive Rehabilitation ..9

i

G.     Money Formerly Deposited into Account 99, Operator's and Chauffeur's Licenses, Now Deposited into Account 977, Law Enforcement and Custodial Officer Supplemental Retirement Fund ....................................................................................10

H.     Money Deposited into Account 421, Criminal Justice Planning .......12

I.     Money Deposited into Account 5029, Juvenile Crime and Delinquency ...............................................................................14

J.     Money Deposited into Account 469, Compensation to Victims of Crime ......................................................................................16

K.     Money Deposited into Account 5153, Emergency Radio Infrastructure ...........................................................................17

L.     Money Deposited into Account 5083, Correctional Management Institute and Criminal Justice Center ................................................18

III.  By Practice and by Statute, Every Consolidated Court Cost Assessed Funds Expenditures that are Unrelated to the Courts or Even to the Criminal Justice System in General .................................................................................19

PRAYER ....................................................................................21

CERTIFICATE OF COMPLIANCE ....................................................22

CERTIFICATE OF SERVICE..............................................................22

ii

# INDEX OF AUTHORITIES

**Cases**

*Armstrong v. State*, 340 S.W.3d 759 (Tex. Crim. App. 2011) ...................................4

*Ex Parte Carson*, 159 S.W.2d 126 (Tex. Crim. App. 1942) (on motion for

    rehearing) ...........................................................................................................3

*Gipson v. State*, 428 S.W.3d 107 (Tex. Crim. App. 2014) .........................................4

*Weir v. State*, 278 S.W.3d 364 (Tex. Crim. App. 2009) .........................................3, 4

**Constitution, Statutes, and Rules**

TEX. CONST. ART. II, SEC. 1 ........................................................................................5

TEX. CRIM. PROC. CODE ANN. ART. 102.016 ................................................................8

Acts 1997, 75th Leg., ch. 1100, § 6(1) ........................................................................6

TEX. CRIM. PROC. CODE ANN. ART. 37.073 ..................................................................7

TEX. EDUC. CODE. ANN. § 96.64(1) ..............................................................................9

TEX. GOV'T CODE ANN. § 414.005 ...............................................................................7

TEX. GOV'T CODE ANN. § 772.0071 ............................................................................13

TEX. GOV'T CODE ANN. § 811.001 ..............................................................................14

TEX. HUM. RES. CODE ANN. § 111.052 .......................................................................11

TEX. LOC. GOV'T CODE ANN. § 133.102 .......................................................................3

**Other Authorities**

Crime Victim Services 2013 Annual Report, Office of the Attorney General .......18

*Gov. Perry Awards $3.8 Million More for Border Security*, Press Release (Feb. 2, 2006) ....................................................................................................14

Interoperable Communications 2014 Annual Report, Office of the Governor .......19

Lawrence F. Alwin, CPA, *A Financial Review of the Law Enforcement Officer Standards and* ......................................................................................10

Lawrence F. Alwin, CPA, *A Financial Review of the Law Enforcement Officer Standards and Education Fund*..........................................................10

Laxley W. Rodney, Betty Crafter, H. Elaine Rodney & Robert M. Mupier, *Variables Contributing to Grade Retention Among African American Adolescent Males*, The Journal of Educational Research, volume 92, Issue 3, page 185, 1999 ....................................................................................................16

Robert Mupier, H. Elaine Rodney, & Lorraine A. Samuels, *Difference in Parenting Style Between African American Alcoholic and Nonalcoholic Parents*, Journal of Contemporary Human Services, Volume 83, number 5, 2002 ...........................16

Texas Comptroller Manual of Accounts .......................................... passim

## IDENTITY AND INTEREST OF AMICUS CURIAE

The Texas Fair Defense Project ("TFDP") is a nonprofit organization based in Austin, Texas. TFDP works to improve fairness in the criminal justice system and reduce the burdens of court costs, fines, and fees on low-income Texans.

This case raises an important question about the constitutionality of the consolidated court cost. The outcome of this case will affect any person convicted of any offense in Texas, other than offenses relating to pedestrians or the parking of motor vehicles. The proper resolution of this case is, therefore, a matter of substantial interest to TFDP and indigent defendants in Texas.

No fee was paid for the preparation or submission of this brief. No party or counsel for a party made a monetary contribution to fund the preparation or submission of this brief.

## SUMMARY OF THE ARGUMENT

Under TEX. LOC. GOV'T CODE ANN. § 133.102, the consolidated court cost is divided between 14 different accounts that are administered by various agencies. At issue is whether the consolidated court cost, as applied to 12 of those 14 accounts, is an unconstitutional tax that does not properly recoup the costs of judicial resources expended in the trial of the case.

The Fourteenth Court of Appeals stated that it would not make "inferences from the titles" of the accounts and indicated that more information about "the uses to which fees are put" would be needed to find the consolidated court cost unconstitutional. *Salinas v. State*, 426.W.3d 318 (Tex. App. —Houston [14th Dist.] pet. granted Sep. 17, 2014). TFDP agrees with Appellant that, because Appellant is bringing a facial challenge against § 133.102, the constitutionality of the statute should be analyzed by its text alone. However, to help this Court put this issue into context and reach a conclusion, this brief presents information on how money from the consolidated court cost is spent once it is deposited into the 12 challenged accounts.

## ARGUMENT

### I. Valid Court Costs Recoup the Judicial Resources Expended in the Trial of the Defendant's Case

In *Ex Parte Carson*, this Court struck down a $1.00 court cost to fund law libraries because it was too attenuated from the costs of trying the defendant's case. 159 S.W.2d 126 (Tex. Crim. App. 1942) (on motion for rehearing). This Court explained that a court cost that is not truly an "item of cost" of the court is invalid. *Id.* The State argues that *Carson* was wrongly decided and that the test of constitutionality should be whether the cost is "reasonably related to the improvement of the criminal justice system."[1] This is inconsistent with several recent cases in which this Court held that court costs are "nonpunitive recoupment[s] of the costs of judicial resources expended in connection with the trial of the case." *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009) (citation omitted); *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011) (quoting *Weir*); *Gipson v. State*, 428 S.W.3d 107, 110 (Tex. Crim. App. 2014) (quoting *Weir*).

In this sense, court costs are "characteristically different" from fines, which courts may collect in order to punish the defendant. *Gipson*, 428 S.W.3d, at 110 (Acala, J., concurring). In *Weir*, this Court held that because court costs are "purely compensatory" means of reimbursing judicial resources, courts do not need to

---

[1] *Appellee's Brief* at 14.

2

include court costs in the trial court's oral pronouncement of the sentence. *Weir*, 278 S.W.3d, at 366 (citation omitted).

Because the consolidated court cost is neither punitive nor compensatory, it cannot be valid as a fine or a court cost. Money from the consolidated court cost funds general State expenditures and is therefore properly characterized as a tax. The collection of taxes is an executive function. Thus, courts that collect money from defendants in order to fund general State expenditures violate the separation of powers under Article II, Section 1 of the Texas Constitution.

## II. With Respect to all Twelve Challenged Accounts, Money from the Consolidated Court Cost Funds Expenditures Unrelated to the Judicial Resources Expended in the Trial of the Defendant's Case

### A. Money Formerly Deposited into Account 5011, Abused Children's Counseling, Now Deposited into Account 1, Unappropriated General Revenue

Previously, 0.0088 percent of the consolidated court cost was deposited into Account 5011, which was administered by the Texas Education Agency.[2] The Legislature repealed Account 5011 in 1997[3] and it was subsequently deactivated in 2000.[4] Since then, the money has been allocated to the General Revenue Fund.[5]

---

[2] Texas Comptroller Manual of Accounts, Revenue object 3704, https://fmcpa.cpa.state.tx.us/fiscalmoa/rev.jsp?num=3704&id=8840

[3] Acts 1997, 75th Leg., ch. 1100, § 6(1).

[4] *Id.*, Email from Financial Reporting Analyst, Tom Zapata, CPA, Financial Reporting Analyst, Texas Comptroller of Public Accounts, Oct. 29, 2014, screenshot available at http://www.texasfairdefenseproject.org/684-2/.

3

There is no designated purpose or administering agency for the money, and once it is deposited into the General Revenue Fund expenditures cannot be traced.[6]

Even if Account 5011 were to fund services for abused children, most defendants, including Mr. Salinas, have not been convicted of an offense related to child abuse. To the extent that costs of services for abused children should be recouped from people convicted of abusing children, a compensatory mechanism already exists. Under Texas law, defendants convicted of abusing children must pay a $100 court cost to the county child abuse prevention fund. *See* TEX. CRIM. PROC. CODE ANN. ART. 102.0186.

**B. Money Deposited into Account 5012, Crime Stoppers Assistance**

Account 5012, Crime Stoppers Assistance, is administrated by the Criminal Justice Division of the Governor's Office and receives 0.2581 percent of the consolidated court cost.[7] The Crime Stoppers Council ("Council") distributes all or nearly all of the money to local crime stopper organizations that meet its certification criteria.[8] Crime stopper organizations partner with local law enforcement agencies, operate 'tip lines' that civilians can call to report suspected

---

[5] Lawrence F. Alwin, CPA, *An Audit Report on Funds Collected as Court Costs in Fiscal Year 2001, State Auditor's Office*, 60 (May 2002), http://www.sao.state.tx.us/reports/main/02-049.pdf; *See also* Zapata Email, *supra* note 4 ("I don't see any program specific expenditures since it goes to unappropriated general revenue and there is no such program set up in our agency.").
[6] *Id.*
[7] Texas Crime Stoppers Council, http://thetexascrimestoppers.org/wp-content/uploads/Council.pdf.
[8] *Id.*; 2001 Audit, *supra* note 5, at 40-41.

criminal activity, and encourage civilians to report crimes by offering awards for information that leads to arrest.[9]

As stated in the appellant's brief, the money from the consolidated court cost in Account 5012 serves an executive 'police power' function and does not recoup the costs of judicial resources expended in the trial of the case.[10] The money also does not recoup executive resources that were expended in the case, since many defendants are apprehended without the aid of a crime stoppers tip. In felony cases in which a reward was given for a crime stoppers tip, a mechanism to reimburse the crime stoppers organization already exists. Under Texas law, a judge may order a defendant convicted of a felony offense to "repay all or part of a reward paid by a crime stoppers organization." TEX. CRIM. PROC. CODE ANN. ART. 37.073(a).

### C. Money Deposited into Account 5013, Breath Alcohol Testing

Account 5013, Breath Alcohol Testing, is administered by the Texas Department of Public Safety ("DPS") and receives 0.5507 percent of the consolidated court cost.[11] The money is designated for the "implementation, administration, and maintenance of the statewide breath alcohol testing program." TEX. CRIM. PROC. CODE ANN. ART. 102.016(c). This money is not used to recoup

---

[9] TEX. GOV'T CODE ANN. § 414.005; Crime Stoppers Council Application for Certification, http://thetexascrimestoppers.org/wp-content/uploads/Application-Initial-Certification-2014.pdf.
[10] Texas Comptroller Manual of Accounts, Account 5012, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=5012
[11] Texas Comptroller Manual of Accounts, Account 5013, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=5013

judicial resources and is not compensatory in nature, since many defendants, including Mr. Salinas, are convicted of crimes that have no connection to breath alcohol testing.

In fiscal years 1997-1999, there were no expenditures from Account 5013.[12] DPS began making expenditures from the account in fiscal year 2000, and in fiscal year 2001, 80 percent of the expenditures went to fund DPS employee salaries and benefits.[13] There were again no expenditures from the account during fiscal years 2011-2013.[14]

### D. Money Deposited into Account 581, Bill Blackwood Law Enforcement Management Institute

Account 581, Bill Blackwood Law Enforcement Management Institute, is administered by Sam Houston State University and receives 2.1683 percent of the consolidated court cost.[15] The Bill Blackwood Law Enforcement Management Institute was "created for the purpose of training of police management personnel." TEX. EDUC. CODE. ANN. § 96.64(1).

Expenditures from Account 581 are unrelated to judicial resources. Funds from Account 581 are being spent on food, instructor fees, and travel expenses for various law enforcement trainings. For example, the Leadership Inventory for

---

[12] 2001 Audit, *supra* note 5, at 44.
[13] *Id.*
[14] Email attachments from Michele Freeland, Legal Assistant, Department of Public Safety, Nov. 14, 2014, *available at* http://www.texasfairdefenseproject.org/684-2/.
[15] Texas Comptroller Manual of Accounts, Account 581, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0581

Female Executives course ("LIFE") "is designed to bridge the existing gap of female representation at executive levels of law enforcement in Texas and nationwide."[16] In fiscal year 2012, $5,991.54 from Account 581 was spent on food, snacks, and catered dinners for LIFE participants.[17] Another example is the International Police Program, which includes an officer exchange program. The program is "led by Magdalena Denham, an experienced international traveler"[18] who received $6,103.73 from Account 581 for travel expenses in fiscal year 2012 alone.[19]

Other types of expenditures from Account 581 in fiscal year 2014 include:

1. $139: A plaque for the Constable's Leadership College Speaker[20]

2. $2,500: A sponsorship donation to the undergraduate honors program at Sam Houston State University[21]

3. $892: A wireless iPad Air[22]

---

[16] LEMIT Programs, http://www.lemitonline.org/programs/prodev/

[17] 2012 LEMIT Invoices, invoice numbers I0043132, I0043297, I0043298, I0056253, I0056761, I0058675, I0068902, I0069191, I0069866, *available at* http://www.texasfairdefenseproject.org/684-2/.

[18] http://www.lemitonline.org/ipp/

[19] 2012 LEMIT Invoices, supra note 17, invoice numbers I0047987, I0050699, I0057756, I0058005, I0062229, I0065158, I0066779, I0069617.

[20] 2014 LEMIT Invoices, invoice number I0111341, *available at* http://www.texasfairdefenseproject.org/684-2/.

[21] The donation went "to provide funding for scholarships, instructional support, programs, and operating expenses for its honors students and faculty." About the Evening, Sam Houston State University, http://www.shsu.edu/academics/honors/letstalk/AbouttheEvening.html. The Bill Blackwood Institute has been a sponsor of the honors program for five years. *See* Let's Talk Honors Event Sponsors, Sam Houston State University, http://www.shsu.edu/academics/honors/letstalk/eventsponsors.html.

4.  $337: Candy[23]

5.  Over 100 orders for dry cleaning services[24]

**E. Money Deposited into Account 116, Law Enforcement Officers Standards and Education**

Account 116, Law Enforcement Officers Standards and Education, is administered by the Texas Commission on Law Enforcement ("TCOLE") and receives 5.0034 percent of the consolidated court cost.[25] Since fiscal year 2001, much of the money in Account 116 has gone to fund law enforcement continuing education grants.[26] Grants are awarded to many types of agencies. In 2004, for example, grantees included 32 city marshals, 29 community colleges, 559 constable offices, 254 sheriff offices, 145 county and district attorney offices, 181 fire departments, 755 police departments, and 72 school districts.[27]

---

[22] 2014 LEMIT Invoices, supra note 20, invoice number I0116104.

[23] *Id.*, invoice number I0112411 (2014).

[24] Searching within the 2014 LEMIT Invoices for "dry cleaning services" yielded 107 results. *Id.*

[25] Texas Comptroller Manual of Accounts, Account 116, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0116.

[26] Kim Vickers, TCOLE Budget Summary and Summary of Recommendations, http://www.lbb.state.tx.us/Documents/SFC_Summary_Recs/83R/Agency%20407.pdf. It seems that the amount of grant money distributed is about $6 million a year. *See, e.g.*, *Id.* ("Recommendations for the Comptroller's Fiscal Programs provide $6.0 million to fund these grants in each year of the 2014–15 biennium."); TCOLE email attachment from Laura Le Blanc, Custodian of Records, TCOLE, Oct. 23, 2014,  (showing exactly $6.0 million on grants in 2014) *available at* http://www.texasfairdefenseproject.org/684-2/; Lawrence F. Alwin, CPA, *A Financial Review of the Law Enforcement Officer Standards and Education Fund*, State Auditor's Office, http://www.sao.state.tx.us/reports/main/04-047.pdf (showing approximately $6.0 million on grants in 2004).

[27] Alwin, *Financial Review*, *supra* note 26, at 10.

Account 116 is also used to fund various TCOLE initiatives. In fiscal year 2014, TCOLE spent $2,694,985 from Account 116 on licensing and standards development, regulation of law enforcement officers, technical assistance to law enforcement agencies, utilities, supplies, travel, capital expenditures, and personnel costs (salary, benefits, etc.).[28]

**F. Money Deposited into Account 107, Comprehensive Rehabilitation**

Account 107, Comprehensive Rehabilitation, is administered by the Department of Assistive and Rehabilitative Services and receives 9.8218 percent of the consolidated court cost.[29] Under TEX. HUM. RES. CODE ANN. § 111.052, funds may only be used to provide rehabilitative services to Texans with disabilities.

Since at least 2011, Account 107 has gone to fund the Comprehensive Rehabilitation Services ("CRS") program. The CRS program is not a judicial program and is not related to the criminal justice system. It is a medical and human services program that serves Texans over age 16 who have suffered a traumatic brain injury or spinal cord injury. The goal of the program is to help its target population "gain and maintain independence in their homes and communities."[30] The CRS program provides services such as "inpatient comprehensive rehabilitation services, outpatient rehabilitation services, and/or post-acute brain

---

[28] TCOLE email attachment, *supra* note 26.
[29] Texas Comptroller Manual of Accounts, Account 107, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0107
[30] Comprehensive Rehabilitative Services, DARS, http://www.dars.state.tx.us/drs/crs.shtml

injury services."[31] The Department of Assistive and Rehabilitative Services estimates that around 7,400 people in Texas will potentially need the CRS program's services by 2017.[32]

### G. Money Formerly Deposited into Account 99, Operator's and Chauffeur's Licenses, Now Deposited into Account 977, Law Enforcement and Custodial Officer Supplemental Retirement Fund

Account 99, Operator's and Chauffeur's Licenses, was administered by the Department of Public Safety and received 11.1426 percent of the consolidated court cost.[33] Since 2011, incoming money from the consolidated court cost has been redirected to Account 977, Law Enforcement and Custodial Officer Supplemental Retirement, which is administered by the Employees Retirement System of Texas.[34]

Though it no longer receives incoming money, funds from Account 99 are still being expended by the Department of Public Safety. In fiscal year 2011, the account was worth over $122 million and expenditures for the year totaled under $50 million.[35] Nearly $3 million was transferred out of the account that year[36] and into the Border Crime Grant Program of the Criminal Justice Division of the

---

[31] http://www.dars.state.tx.us/drs/crs.shtml

[32] 3A Strategy Request, Page 2, Goal 2, Objective 3, Strategy 4, *available at* http://www.texasfairdefenseproject.org/684-2/.

[33] Texas Comptroller Manual of Accounts, Account 99, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0099

[34] Texas Comptroller Manual of Accounts, Account 977, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0977

[35] 2011 DPS Financial Report, *available at* http://www.texasfairdefenseproject.org/684-2/.

[36] 2011-2013 DPS Financial Reports, *available at* http://www.texasfairdefenseproject.org/684-2/.

Governor's Office under TEX. GOV'T CODE ANN. § 772.0071(d).[37] Every year since at least 2011, over $1 million from the fund has gone to reducing the threat of terrorism,[38] over $2 million to emergency and disaster response coordination and mitigation,[39] over $14 million to regulatory services,[40] and over $19 million to local border security efforts.[41] Some of these subject areas, such as disaster response, have nothing to do with the courts or even necessarily with crime.

Account 977 began receiving money from the consolidated court cost in 2013. This account funds supplemental retirement and death benefits for government employees who have completed 20 or more years of service as a law enforcement or custodial officer.[42] Qualifying employees include executive-branch officers employed by the Board of Pardons and Paroles, the correctional institutions division of the Texas Department of Criminal Justice, the Texas Alcoholic Beverage Commission, and the Parks and Wildlife Department.[43]

---

[37] "Undedicated and unobligated funds in the operators and chauffeurs license account may be appropriated only to the criminal justice division for the purpose of awarding grants under this section."

[38] 2014 DPS Legislative Appropriations Request, at 20, *available at* http://www.dps.texas.gov/LBB/lar2014-15.pdf

[39] *Id.* at 43, 48, 52.

[40] *Id.* at 81, 84, 88.

[41] *Id.* at 14.

[42] Texas Comptroller Manual of Accounts, Account 977, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0977

[43] TEX. GOV'T CODE ANN. § 811.001.

**H. Money Deposited into Account 421, Criminal Justice Planning**

Account 421, Criminal Justice Planning, is administered by the Criminal Justice Division of the Governor's Office and receives 12.5537 percent of the consolidated court cost as well as matching federal funds.[44] Account 421 provides grants to state and local projects "designed to reduce crime and improve the criminal and juvenile justice systems."[45]

Much of the money from Account 421 funds border security efforts. In 2006, for example, Governor Perry awarded $3.4 million to Operation Linebacker, an initiative "to increase law enforcement presence along the Texas-Mexico border, particularly between legal points of entry."[46] The award provided "additional patrol hours, new technology tools, and rapid deployment teams of state troopers."[47] Likewise, in 2011, Governor Perry awarded nearly $2 million to the Department of Public Safety's Drawbridge Expansion Project to "increase the number of

---

[44] Texas Comptroller Manual of Accounts, Account 421, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0421
[45] *Id.*
[46] *Gov. Perry Awards $3.8 Million More for Border Security*, Press Release (Feb. 2, 2006), http://governor.state.tx.us/news/press-release/2500/.
[47] *Id.*

surveillance cameras located along the Texas-Mexico border."[48] Smaller grants are frequently awarded to fund border-area prosecutor positions.[49]

Many Account 421 grants also go towards educational and counseling services for children. For example, last year a $38,163 grant funded a school resource officer to "conduct patrols, participate in mentoring students, [and] teach classes on bullying, cyberbullying, and drug awareness"[50] and a $43,631 grant funded an initiative "to combat truancy, discipline problems, and poor academic performance."[51] Truancy-related grants have also gone towards GPS devices that monitor students' activities.[52] Grants benefiting children also include those awarded to Big Brother and Big Sister mentoring programs,[53] Court Appointed Special Advocate ("CASA") programs,[54] Drug Abuse Resistance Education ("DARE") programs,[55] and after school art programs.[56]

Other grants fund law enforcement training academies,[57] outpatient drug treatment programs,[58] undercover sting operations to catch vendors selling

---

[48] 2011-2013 Criminal Justice Planning Grants, email attachment from Chis Sterner, Assistant General Counsel, Office of the Governor, grant number 2535401, *available at* http://www.texasfairdefenseproject.org/684-2/.

[49] See, e.g., *Id.*, grant numbers 2283704, 2537803, 2749401, 2537203, 2537903, 2537603, and 2536503.

[50] *Id.*, grant number 2666601.

[51] *Id.*, grant number 2725501.

[52] *Id.*, grant number 2482401.

[53] *Id.*, grant numbers 1903305 and 2403802.

[54] *Id.*, grant numbers 1464613 and 1464614.

[55] *Id.*, grant numbers 1431013, 1598311, 1431014, 1598312, 1431015, and 1598313.

[56] *Id.*, grant number 2592101.

[57] *Id.*, grant numbers 1485913, 1426412, 1465913, and 1427613.

alcoholic beverages to minors,[59] and tactical marine unit boats.[60] The Department of Public Safety has also used at least $200,000 from Account 421 to fund its Voter ID project, the goal of which is to "promote the integrity of the voting process and to divert the potential for voter fraud."[61]

### I. Money Deposited into Account 5029, Juvenile Crime and Delinquency

Account 5029, Center for Study and Prevention of Juvenile Crime and Delinquency, is administered by Prairie View A&M University and receives 1.2090 percent of the consolidated court cost.[62] Prairie View A&M University uses Account 5029 to fund the Texas Juvenile Crime Prevention Center, which is housed in the College of Juvenile Justice and Psychology. The Center conducts research relating to psychology and juvenile crime, offers undergraduate and graduate degrees, and "improve[s] dissemination of knowledge pertaining to human behavior."[63] The juvenile justice system is separate from the Texas criminal system and funds spent on the juvenile justice system do not recoup the costs of criminal court resources.

---

[58] *Id.*, grant numbers 2056406, 2067604, and 2196505.
[59] *Id.*, grant number 1996204.
[60] *Id.*, grant number 2698501.
[61] *Id.*, grant number 2750401.
[62] Texas Comptroller Manual of Accounts, Account 5029, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=5029.
[63] Mission and Purpose, http://www.pvamu.edu/cojjp/texas-juvenile-crime-prevention-center/mission-purpose/.

Over half of expenditures from Account 5029 fund staff salaries and benefits.[64] Staff research projects include studies on grade retention among African American adolescent males[65] and on differences in parenting styles between African American alcoholic and nonalcoholic parents in the Midwest.[66] Staff also provide trainings for the general public. For example, the Center's webpage advertises parent engagement trainings, which emphasize communication, effective parenting, effective advocacy, and parental involvement.[67]

Another of the Center's projects is the Gavel Series, which offers classes in legal topics, most of which are unrelated to juvenile justice. Unrelated topics include real estate,[68] bankruptcy,[69] student financial aid abuse,[70] landlord/tenant

---

[64] 2012 Expenditure Report, email attachment from Paula Sandles, Prairie View A&M University, Nov. 13, 2014, *available at* http://www.texasfairdefenseproject.org/684-2/; *see also* 2001 Audit, *supra* note 5, at 54, (showing that 88% of funding went to salaries and benefits in 2001).

[65] Laxley W. Rodney, Betty Crafter, H. Elaine Rodney & Robert M. Mupier, *Variables Contributing to Grade Retention Among African American Adolescent Males*, The Journal of Educational Research, volume 92, Issue 3, page 185, 1999.

[66] Robert Mupier, H. Elaine Rodney, & Lorraine A. Samuels, *Difference in Parenting Style Between African American Alcoholic and Nonalcoholic Parents*, Journal of Contemporary Human Services, Volume 83, number 5, 2002, *available at* http://www.tandfonline.com/doi/abs/10.1080/00220679909597594#.VGo5wfTF_R4 (studying a sample of 1,000 African American adolescents in a Midwestern city)

[67] Parent Engagement Training Program, http://www.pvamu.edu/cojjp/texas-juvenile-crime-prevention-center/training/

[68] Gavel Series, Aug. 3 2013 http://www.pvamu.edu/cojjp/texas-juvenile-crime-prevention-center/the-gavel-series/the-gavel-series-aug-3rd-2013/

[69] Gavel Series to Address Community Issues, (Jan. 18, 2013), http://www.pvamu.edu/news/2013/01/18/gavel-series-to-address-community-issues/

[70] Gavel Series Sign Up Page, http://www.pvamu.edu/cojjp/texas-juvenile-crime-prevention-center/the-gavel-series/

rights,[71] and entertainment law.[72] The next event in the series features classes titled "Holiday Blues: Your Mental Health" and "Tax Law Basics: Filing Your Taxes."[73]

**J. Money Deposited into Account 469, Compensation to Victims of Crime**

Account 469, Compensation to Victims of Crime, is administered by the Attorney General and receives 37.6338 percent of the consolidated court cost, as well as money from other funding sources.[74] Account 469 directly compensates victims for crime-related expenses, awards grants to state agencies and nonprofit corporations that serve victims of crime, and reimburses law enforcement agencies for sexual assault medical forensic exams.[75]

In fiscal year 2013, Account 469 awarded compensations to 11,967 victims. That same year, over $4 million went towards sexual assault examination reimbursements[76] and over $43 million was awarded in victim services grants.[77] There are eight victim assistance grant programs, which include victim notification

---

[71] Gavel Series, May 4 2013, http://www.pvamu.edu/cojjp/texas-juvenile-crime-prevention-center/the-gavel-series/the-gavel-series-may-4-2013/

[72] Gavel Series, Nov. 2, 2013, http://www.pvamu.edu/cojjp/texas-juvenile-crime-prevention-center/the-gavel-series/november-2-2013/

[73] Gavel Series Flyer, http://www.pvamu.edu/include/College%20of%20Juvenile%20Justice%20and%20Psychology/Events/flyers/gavel-flyer.pdf

[74] Texas Comptroller Manual of Accounts, Account 469, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0469

[75] Crime Victim Services 2013 Annual Report, Office of the Attorney General, 1, https://www.texasattorneygeneral.gov/AG_Publications/pdfs/cvs_annual2013.pdf.

[76] *Id.* at 12.

[77] *Id.* at 1.

16

system grants, Court Appointed Special Advocate (CASA) grants, and Children's Advocacy Center grants.[78]

As Appellant points out, a mechanism for reimbursing crime victims already exists in the form of restitution.[79] In addition, under Texas law a judge can order a defendant to compensate any expenditures from the Account 469 that are directly related to that defendant's case.[80] It is important to compensate victims of crime. However, someone convicted of a victimless crime should not be forced to pay the victim of another defendant's crime under the guise of a court cost.

### K. Money Deposited into Account 5153, Emergency Radio Infrastructure

Account 5153, Emergency Radio Infrastructure, is administered by the Department of Public Safety and receives 5.5904 percent of the consolidated court cost. Account 5153 was established in September 2011. Though the account is collecting money, there have not yet been any expenditures.[81]

Once the money from Account 5153 is appropriated, it will be used to develop and maintain an interoperable statewide emergency radio infrastructure. The goal of this project is to improve communications during emergencies and

---

[78] *Id.* at 24.
[79] Appellant brief, at 22.
[80] Texas Comptroller Manual of Accounts, Account 469, https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=0469.
[81] Interoperable Communications 2014 Annual Report, Office of the Governor, 19, http://www.txdps.state.tx.us/LawEnforcementSupport/communications/interop/documents/interopRpt.pdf.

mitigate the threat of both natural and manmade disasters.[82] Many of the disasters

that the emergency radio infrastructure is anticipated to address are unrelated to

criminal activity or even human agency. As one report on the need for such

infrastructure states, "Texas still experiences record numbers of natural disasters

requiring rapid, coordinated response from the emergency response community. . . .

The expanse of natural disasters experienced in Texas highlights the importance

and need of coordinated response during these emergencies."[83]

**L. Money Deposited into Account 5083, Correctional Management Institute and Criminal Justice Center**

Account 5083, Correctional Management Institute and Criminal Justice

Center, is administered by Sam Houston State University and receives 1.209% of

the consolidated court cost.[84] A sample of the programs they offer include

"Wardens Peer Interaction Program," "Women in Criminal Justice Conference,"

"National Jail Leadership Command Academy," and "Senior Level Corrections

Leadership Development Program."[85]

Account 5083 is similar to Account 581, Bill Blackwood Law Enforcement

Management Institute, which is also administered by Sam Houston State

---

[82] *Id.* at 22.
[83] *Id.* at 3-4.
[84] Texas Comptroller Manual of Accounts, Account 5083,
https://fmcpa.cpa.state.tx.us/fiscalmoa/fund.jsp?num=5083
[85] About CMIT, http://www.cmitonline.org/about.html.

University.[86] Like Account 581, Account 5083 provides funds for food and travel expenses. For example, overall expenditures for food totaled over $2,000 in July 2013 alone,[87] and in 2014 the Account paid more than $12,000 for an undergraduate alumna to travel to Salt Lake City.[88] Also like Account 581,[89] Sam Houston State University has used Account 5083 to donate $2,500 to the University's undergraduate honors program every year for the past five years.[90] In fiscal year 2012, $2,432 from Account 5083 was used to buy wireless iPads.[91] Last year, the Account provided $250 for the University's annual Mardi Gras festival.[92]

III. **By Practice and by Statute, Every Consolidated Court Cost Assessed Funds Expenditures that are Unrelated to the Courts or Even to the Criminal Justice System in General**

The State claims that all of the accounts improve the criminal justice system, even if they do not recoup judicial resources. In practice, all 12 of the challenged

---

[86] *Supra* note 15.

[87] 2013 CMIT Invoices, invoice numbers I0098751, I0098752, *available at* http://www.texasfairdefenseproject.org/684-2/.

[88] 2014 CMIT Invoices, invoice number I0139718, *available at* http://www.texasfairdefenseproject.org/684-2/; Fall 2011 Commencement Program, Sam Houston State University, http://www.shsu.edu/dept/registrar/documents/commencement-programs/Fall%202011%20Commencement%20Program.pdf (listing Kalyn Rochelle Cavazos among the 2011 graduating class).

[89] Account 581, Bill Blackwood Law Enforcement Management Institute, *supra* note 21.

[90] 2012 CMIT Invoices, invoice number I0051744, *available at* http://www.texasfairdefenseproject.org/684-2/; 2013 CMIT Invoices, supra note 87, invoice number I0085411; Let's Talk Honors Event Sponsors, Sam Houston State University, http://www.shsu.edu/academics/honors/letstalk/eventsponsors.html (listing the Correctional Management Institute of Texas as a sponsor for five years).

[91] 2012 CMIT Invoices, *supra* note 90, invoice numbers I0053227, I0068657.

[92] 2013 CMIT Invoices, *supra* note 87, invoice number I0084175.

accounts use the consolidated court cost for expenditures that are unrelated to the courts or even to the criminal justice system in general. For example, the consolidated court cost forces criminal defendants to subsidize anti-bullying programs,[93] voter ID projects,[94] undergraduate honors departments,[95] and studies on grade retention among African American students.[96]

Furthermore, two of the accounts are legislatively mandated to fund programs unrelated to either the courts or the criminal justice system more broadly. When Account 5011, Abused Children's Counseling, was repealed by the legislature, the money was automatically re-categorized as unappropriated general revenue. The second account, Account 107, Comprehensive Rehabilitation, is required by statute to provide assistance to people with disabilities.

The State also argues that to prevail on his facial challenge, Appellant "must establish that the statute always operates unconstitutionally in all possible circumstances."[97] Because the percentages allotted to each account are set by statute, money from the consolidated court cost always goes to impermissible functions. There is no circumstance in which the consolidated court cost only funds

---

[93] *See Money Deposited into Account 421, Criminal Justice Planning, supra*.
[94] *Id.*
[95] *See Money Deposited into Account 581, Bill Blackwood Law Enforcement Management Institute, supra*.
[96] *See Money Deposited into Account 5029, Juvenile Crime and Delinquency, supra*.
[97] Appellee's Brief at 7.

expenditures reasonably related to the courts or even to the criminal justice system in general.

## PRAYER

For the reasons stated above, the Amicus Curiae prays the Court vacate the holding of the Fourteenth Court of Appeals and order the consolidated court cost deleted from the judgment and bill of costs, or grant all relief the Court may deem appropriate.

Respectfully Submitted,

_____

Emily Gerrick
Texas Bar No. 24092417
egerrick@fairdefense.org
TEXAS FAIR DEFENSE PROJECT
510 South Congress Avenue, Suite 208
Austin, Texas 78704
Tel. 512-879-1189
Fax 512-637-5224

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared using Microsoft Word in a conventional typeface no smaller than 14-point text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i) because it contains 4,395 words, as calculated by the word processing software, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

_____
Emily Gerrick
Attorney for Amicus

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Amicus Curiae's Brief has been served on each of the following by prepaid first-class United States Mail: Alan Curry, Assistant District Attorney, 1201 Franklin Street, 6th Floor Houston, TX 77002, and Jani Maselli, Assistant Public Defender, 1201 Franklin, 13th Floor, Houston, TX 77002 on January 14, 2015.

_____
Emily Gerrick
Attorney for Amicus