**Julie Gaylene LOMBARDO, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14-15-00406-CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed March 16, 2017.

Robert A. Scardino, Jr., Houston, TX, for Appellant.

Patricia McLean, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Brown and Jewell.

## OPINION

Kevin Jewell, Justice

Appellant Julie Gaylene Lombardo contends her sentence for first-degree felony theft is illegal. Appellant also argues that the trial court erred by re-sentencing her in her absence and by revoking her "regular" community supervision.

We first conclude that the trial court did not abuse its discretion in revoking appellant's community supervision. However, the trial court erred by reducing the term of confinement originally assessed to a term of confinement less than the minimum prescribed for the offense, thus imposing an illegal sentence. Therefore, we affirm the revocation of appellant's community supervision, but reverse the trial court's reduced sentence, and remand the case for the trial court to determine the term of confinement in compliance with article 42A.755(a) of the Code of Criminal Procedure and to sentence appellant accordingly. We overrule appellant's remaining argument as moot.

## Background

In February 2004, appellant pled guilty to first-degree felony theft. In its February 2004 judgment, the trial court found appellant guilty of the charged offense, assessed punishment at ten years' confinement, suspended imposition of sentence, and placed appellant on ten years' community supervision. As a condition of the community supervision, the trial court ordered appellant to perform 360 hours of community service, and pay restitution in the amount of $237,235.34. Appellant originally was to pay $2,050 in restitution per month, but the trial court subsequently reduced appellant's payments to $300 per month in 2008. Beginning in August 2010, appellant failed to pay, or underpaid, the monthly restitution amount.

A few days before appellant's probation [1] was set to expire in February 2014, the State moved to revoke community supervision for failure to pay restitution. The trial court held a hearing, at which the sole issue was appellant's ability to make the restitution payments. The State presented five witnesses, appellant testified on her own behalf, and both parties introduced exhibits. At the time of the revocation hearing, appellant had paid $33,460 in restitution.

The trial court found, based upon the credible evidence presented, appellant failed to pay restitution at the rate of $300 per month as ordered, and that her failure was intentional and willful and not because of an inability to pay. The trial court granted the State's motion to revoke community supervision. Rather than sentence appellant based on the ten years' confinement originally assessed, the trial court reduced the term of confinement to four years' confinement and sentenced appellant accordingly.

## Analysis

### A. Revocation of Community Supervision

We address appellant's last issue first. Appellant argues that the trial court erred when it revoked her community supervision. There are two parts to appellant's argument: first, whether the trial court erred in failing to consider a statutorily prescribed factor currently required in a revocation proceeding; and second, whether the trial court erred in revoking appellant's probation despite an inability to pay restitution. We address each in turn.

### 1. Statutory Factors in Revocation Proceedings

When appellant was originally sentenced and placed on ten years' community supervision, one condition of her sentence was to pay restitution to the complainant. *See* Tex. Code Crim. Proc. art. 42.037(h) (if a defendant is placed on community supervision, the trial court shall order the payment of restitution as a condition of community supervision). The State moved to revoke appellant's probation, alleging that she had failed to pay the restitution ordered by the trial court as a condition of her community supervision.[2] The trial court may revoke community supervision if the defendant fails to comply with the order. *See id.* In determining whether to revoke community supervision, the trial court "shall consider" certain factors set forth by statute. *See id.*

---

1. The terms "community supervision" and probation are used interchangeably in this opinion and with the same intended meaning.

2. One of appellant's probation officers testified that appellant completed her community service in May 2006. The officer also testified that appellant was current on paying her probation supervisory fees. Both parties agreed that appellant had complied with all of the conditions of community supervision, except for paying restitution.

Appellant contends the trial court erred in failing to consider one of the statutory factors, but this argument depends on which version of the restitution statute applies. In 2004—when the trial court initially ordered appellant to pay restitution—the statute provided:

> In determining whether to revoke community supervision, parole, or mandatory supervision, the court or parole panel shall consider:
>
> (1) the defendant's employment status;
>
> (2) the defendant's earning ability;
>
> (3) the defendant's financial resources;
>
> (4) the willfulness of the defendant's failure to pay; and
>
> (5) any other special circumstances that may affect the defendant's ability to pay.

Act of May 21, 2001, 77th Leg., R.S., ch. 856, § 10, 2001 Tex. Gen. Laws 1704, 1706 (codified at Tex. Code Crim. Proc. art. 42.037(h)).

In 2005, the Legislature amended the statute to read:

> In determining whether to revoke community supervision, parole, or mandatory supervision, the court or parole panel shall consider:
>
> (1) the defendant's employment status;
>
> (2) the defendant's *current and future* earning ability;
>
> (3) the defendant's *current and future* financial resources;
>
> (4) the willfulness of the defendant's failure to pay;
>
> (5) any other special circumstances that may affect the defendant's ability to pay; *and*
>
> (6) *the victim's financial resources or ability to pay expenses incurred by the victim as a result of the offense.*

Act of May 27, 2005, 79th Leg., R.S., ch. 969, § 1, 2005 Tex. Gen. Laws 3244, 3246

(codified at Tex. Code Crim. Proc. art. 42.037(h)) (additions to prior version in italics).

In amending the statute, the Legislature made clear:

> The changes in law made by this Act apply only to an order of restitution that is entered or a condition of community supervision that is imposed on or after September 1, 2005. An order of restitution that is entered or a condition of community supervision that is imposed before September 1, 2005, is governed by the law in effect on the date the order was entered or the condition was imposed, and the former law is continued in effect for that purpose.

Act of May 27, 2005, 79th Leg., R.S., ch. 969, § 3, 2005 Tex. Gen. Laws 3244, 3247.

Appellant argues that, although the original restitution order was imposed in 2004, the trial court subsequently modified the order by lowering appellant's monthly payments in 2008. This modification, appellant argues, triggers the current version of the statute, and it was error for the trial court to not consider the sixth factor.

We conclude that the former version of the statute applies. The trial court's decision to lower appellant's monthly restitution payments was not a separate restitution order or condition of community supervision. It merely modified the preexisting restitution order. *See Bryant v. State*, 391 S.W.3d 86, 88 n.2 (Tex. Crim. App. 2012) (applying version of restitution statute that was effective "when the trial court entered appellant's *original* restitution order") (emphasis added); *see also* Tex. Code Crim. Proc. art. 42.12, § 11(a) (West 2006) (trial court may modify conditions of community supervision at any point during probation period).[3] The trial court did not

---

3. Effective January 1, 2017, the Legislature    repealed article 42.12 and recodified it as

abuse its discretion in failing to address the sixth factor from the current version of the governing statute.

### 2. No Abuse of Discretion

We next review the record to determine whether the trial court erred in revoking appellant's probation under the applicable standard.

■ A trial court has discretion to revoke community supervision when a preponderance of the evidence supports the State's allegations that the defendant violated a condition of her probation. *See Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012) (op. on reh'g). We therefore review a trial court's revocation of community supervision for an abuse of discretion. *Id.* "The central issue to be determined in reviewing a trial court's exercise of discretion in a [community-supervision] revocation case is whether the [defendant] was afforded due process of law." *DeGay v. State*, 741 S.W.2d 445, 450 (Tex. Crim. App. 1987).

■ "The plain language of the former restitution statute permit[s] revocation for failure to pay restitution as long as the trial court considered certain factors pertaining to a defendant's financial circumstances." *Bryant*, 391 S.W.3d at 92. There are, however, three limits to a trial court's discretion to revoke probation: (1) the State must prove at least one violation of the terms and conditions of community supervision; (2) an appellate court will review the trial court's decision for an abuse of discretion; and (3) federal due process requires that a trial court consider alternatives to imprisonment before incarcerating an indigent defendant who is unable to pay

amounts due under community supervision. *Id.* at 93.

■ We conclude the trial court acted within the prescribed limits. First, there is no dispute that appellant violated a condition of her probation by failing to pay restitution as ordered. Appellant admitted as much. At the revocation hearing, appellant testified:

Q. All right. And when you pled guilty, you were aware that you would have to pay back the restitution as a condition of your probation being terminated satisfactorily?

A. Yes, ma'am.

\* \* \*

Q. In other words you knew that you were not paying the amount you were supposed to for restitution every month?

A. Yes, ma'am.

The State therefore proved at least one violation of the terms and conditions of appellant's community supervision. *See Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006) (order revoking probation must be supported by a preponderance of the evidence that the defendant violated a condition of probation).

Second, we review whether the trial court's decision was within its discretion to revoke appellant's community supervision. *See id.* at 763 (trial court's order revoking community supervision reviewed for abuse of discretion); *see also Bryant*, 391 S.W.3d at 93. The record demonstrates that the trial court considered the statutorily enumerated factors in making its revocation determination in compliance with the former restitution statute. *See Bryant*, 391 S.W.3d at 93-94. This, together with our

Chapter 42A. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, §§ 1.01, 3.01, 4.02, 2015 Tex. Gen. Laws 2321, 2320-65, 2395 (codified at Tex. Code Crim. Proc. ch. 42A). Under this recodification, former article 42.12, section

11 is now found at article 42A.051(b). *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 1.01, 2015 Tex. Gen. Laws 2321, 2325 (codified at Tex. Code Crim. Proc. art. 42A.051(b)).

determination that the State proved that appellant violated the conditions of her probation, leads us to conclude that the trial court did not abuse its discretion. *See id.* at 94 (holding that there was no abuse of discretion where trial court considered statutory factors and State proved a violation of probation conditions).

Third, we consider whether the trial court's decision was—or should have been—constrained by constitutional due-process concerns. Appellant maintains that she cannot afford any further restitution payments. At the revocation hearing, appellant introduced evidence of her financial status, which she says "clearly demonstrated an inability to pay the restitution." Appellant, relying on *Bearden v. Georgia*, 461 U.S. 660, 672-73, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), argues that federal due process requires a trial court to consider alternatives to imprisonment before incarcerating an indigent defendant who is unable to make court-ordered payments as a condition to community supervision.

█ As one judge has noted, there is potentially some tension between Texas law and the federal Constitution regarding revocation of an indigent defendant's probation. *See Gipson v. State*, 428 S.W.3d 107, 111 (Tex. Crim. App. 2014) (Alcala, J., concurring). Under Texas law, ability to pay is not an affirmative defense to revocation of community supervision. *See Bryant*, 391 S.W.3d at 93 n.7 ("[W]ith respect to a defendant's failure to pay restitution, ... the Legislature intended to eliminate both the State's burden of demonstrating [a defendant's] financial ability and the affirmative defense of inability to pay.").[4] But,

revocation may be improper under the federal Constitution if the trial court fails to consider the defendant's ability to pay and alternatives to incarceration, before revoking probation. *See Bearden*, 461 U.S. at 672, 674, 103 S.Ct. 2064.

We need not address any perceived discord between Texas and federal revocation principles. Nothing in *Bearden* changes our conclusion. Appellant does not argue that the trial court erred in failing to consider alternatives to imprisonment, nor did appellant raise a federal due-process objection at the time of revocation. *See* Tex. R. App. P. 33.1(a); *Gipson*, 428 S.W.3d at 109 n.6 (defendant waived constitutional claim by not objecting at time of revocation). Regardless, the trial court considered whether appellant could pay restitution, and determined that she could but willfully failed to do so. *See Bearden*, 461 U.S. at 672, 103 S.Ct. 2064 (revocation permissible if probationer willfully refused to pay or failed to make sufficient bona fide efforts to pay). We see nothing in the record to lead us to conclude that the trial court abused its discretion in making that determination.

The trial court heard evidence regarding appellant's financial circumstances and summarized that evidence in explaining how it reached the decision to revoke appellant's probation. For context, we briefly discuss both the evidence highlighted by the trial court in rendering its decision and the evidence adduced by both parties at the revocation hearing.

*Employment status*: Appellant concedes that she has been employed since the time

4. Texas law does require the State to prove a defendant's ability to pay in certain instances. For example, article 42.12 of the Texas Code of Criminal Procedure requires the State in a revocation hearing to prove, by a preponderance of the evidence, that the defendant was able to pay, but did not pay, compensation paid to appointed counsel, community-supervision fees, or court costs as ordered by the trial court. *See* Tex. Code Crim. Proc. art. 42.12, § 21(c) (West 2006) (recodified at Tex. Code Crim. Proc. art. 42A.751(i), *see supra*). This statute does not apply to restitution or fines. *See Gipson v. State*, 428 S.W.3d 107, 108 (Tex. Crim. App. 2014) (fines); *Bryant*, 391 S.W.3d at 90, 93 n.7 (restitution).

of her arrest and the trial court's 2004 restitution order, up through the time of the revocation hearing in 2015. Appellant owned an office supply company, Star Office Products, from 2001 until she sold it to Bishop's Office Needs in 2010. Appellant has been employed full-time at Bishop's since December 2010, earning approximately $3,500 per month (or $42,000 per year).[5]

*Earning ability*: Appellant says she introduced "a comprehensive list" of her income, her husband's income, loan documents, bills, and promissory notes. This is evidence of financial resources, a different factor, not evidence of appellant's earning ability. The evidence showed that, in addition to generating income from her regular job, appellant owned a business, Luscious Treats, which generated approximately $2,000 to $3,000 in annual earnings.[6] Appellant never reported this income to her probation officers.

The trial court found that from August 2010 through January 2014, appellant and her husband earned $325,784 (or roughly $7,750 per month), as set forth in one of the exhibits introduced by appellant. During the same period, appellant paid an average of $82.14 per month in restitution.[7] Comparing the amount and frequency of appellant's earnings with the amount and frequency of restitution payments, this factor weighs in favor of revocation. *See, e.g.*, *Quisenberry v. State*, 88 S.W.3d 745, 755 (Tex. App.—Waco 2002, pet. ref'd).

*Financial resources*: Appellant argued that the evidence showed "a dire financial situation" and "a tight budget every single month." Specifically, she says she had $100,000 in business debt, as well as an unspecified amount of personal debt. She took out a $36,000 loan from her employer in 2012, and a $95,000 loan in 2013 from an individual with whom appellant and her husband self-financed their home. Appellant and her husband also re-financed their home with a bank. Several exhibits admitted at the revocation hearing indicate that appellant failed to pay some mortgage payments, occasionally triggering a foreclosure warning. Appellant testified that she and her husband prematurely closed their retirement accounts, though the record does not reveal the amount of those disbursements.

One of appellant's probation officers testified that appellant told him that she could not make the $300 restitution payments due to her debt. When asked if appellant had provided the officer with any documentation of her debt, the officer answered, "Not that I recall." Another officer testified that appellant's probation case file contained a budget that appellant submitted in 2011. The State introduced the budget as an exhibit—it is a one-page document showing what appellant claimed were her average monthly expenses at the time.

As the State points out, there are several troubling discrepancies between appel-

---

**5.** Though the State suggests that appellant may have been intentionally underemployed at some point during the ten-year probation period, the trial court specifically found that she was never underemployed. We see nothing in the record to disturb the trial court's finding.

**6.** Appellant now claims that the entirety of Luscious Treats' profits goes toward repaying a loan appellant took out in 2012. The only support for this assertion that appellant cites is her post-conviction briefing. Appellant nev-

er argued this point or presented evidence in support of it in the early-termination hearing or the revocation hearing.

**7.** The trial court's finding of average monthly restitution may be generous considering the evidence before it. The exhibit showing amounts paid for restitution shows numerous entries of $62 or $67; these, as the probation officers testified, are supervisory fees that go to the probation department—not restitution to the complainant.

lant's contention that her family was on a tight monthly budget, and the evidence presented at the revocation hearing. Appellant claimed she was forced to sell her car and owned only a truck with over 200,000 miles on it, but evidence showed she owed a car payment on a 2008 Ford Mustang.

Appellant also submitted a phone and internet bill showing monthly charges of approximately $250, but her "Phone/Cell/TV" expenses listed in her budget spreadsheet ranged from $247.14 to $1061.67 per month. From this evidence, the trial court concluded that appellant paid $26,682 for phone and cable expenses over roughly three and a half years (for an average of $635 per month), while paying only $3,438 in restitution during the same period.[8]

The trial court concluded appellant had financial resources to pay restitution, which weighs in favor of revocation.

*Willfulness in failure to pay*: Appellant contends that her multiple loans show "a pattern of desperate desire to demonstrate her willingness to fulfill" the restitution order. But appellant's own statements undercut this notion. She admits that the $95,000 loan obtained in 2013 went toward paying off appellant's business debt, not toward restitution payments. The trial court also found that appellant repaid over $73,000 in loans from 2010 to 2014, in sums varying from $1,200 to $1,900 per month. We find nothing in the record to explain why and how appellant could meet those debt obligations while claiming an inability to pay the court-ordered restitution payments.

Appellant also points to the probation department's placing her case on the "compliance caseload" in 2011, a special docket for cases in which the probationer is in compliance with the terms and conditions of probation. This approval appears to have resulted from an administrative error that indicated appellant was ahead on her payment schedule. At a 2011 hearing on appellant's motion to terminate her probation early, there was testimony regarding a "credit" on appellant's account, but one of her probation officers testified that the "credit" was an administrative error. The probation department's payment system automatically re-calculated appellant's past payments (at the $2,050 monthly rate) according to the modified amount (at the $300 monthly rate), causing the system to incorrectly read that appellant was ahead on her payments. The officer testified that there was never an actual credit on appellant's account. After this error was clarified at the 2011 hearing, appellant's payment receipts clearly indicated the actual balance due, which was over $200,000.

This evidence, together with appellant's failure to file anything with the trial court prior to the revocation hearing indicating that she needed relief from the restitution payments, supports the trial court's finding that appellant willfully failed to pay the court-ordered restitution. *Accord, e.g., Thomas v. State*, 379 S.W.3d 436, 442 (Tex. App.—Amarillo 2012, no pet.) (affirming revocation of deferred adjudication for failure to pay restitution and noting appellant had not sought relief from restitution order prior to revocation).

*Special circumstances*: Appellant also argues that her husband's hip surgery in 2013 caused him to be out of work for a short period of time, and the family had over $20,000 in medical bills from 2009 to 2012. As the trial court noted, however, appellant had been delinquent in her restitution payments since 2010, several years before her husband's surgery. While we are mindful that unexpected expenses may

8. We calculate slightly different numbers from the exhibit showing appellant's monthly payments, but the difference is minimal. We use the calculations stated by the trial court.

affect a probationer's ability to make restitution payments, we cannot conclude on this record that the trial court abused its discretion in revoking appellant's probation for failure to pay restitution.

The trial court was not required to weigh the factors in any particular manner; revocation is not "conditioned on the quantity or quality of evidence adduced as to the enumerated factors." *Bryant*, 391 S.W.3d at 93. We conclude that the trial court did not abuse its discretion in revoking appellant's probation based on a finding that appellant failed to pay restitution as a condition of community supervision and that her failure was intentional and willful and not because of an inability to pay. *Bearden* accordingly does not compel reversal. *See Bearden*, 461 U.S. at 672, 103 S.Ct. 2064.

We overrule appellant's third issue.

## B. Illegal Sentence

■ Appellant was charged with theft of property valued at $200,000 or more, a first-degree felony at the time. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 393, § 20, 2003 Tex. Gen. Laws 1633, 1639 (codified at Tex. Penal Code § 31.03(e)(7)).[9] A first-degree felony is punishable by imprisonment for life or for a term of not more than ninety-nine years or less than five years. *See* Tex. Penal Code § 12.32(a) (West 2011); *see also* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3603 (same).

After appellant pled guilty to first-degree felony theft in 2004, the trial court found appellant guilty of the charged offense, assessed punishment at ten years' confinement, suspended imposition of the sentence, and placed appellant on ten years' community supervision. The ten years' confinement assessed by the trial court in 2004 was within the permissible range of punishment for the offense. *See* Tex. Penal Code § 12.32(a).

After revoking appellant's community supervision, the trial court's 2015 judgment reformed the sentence, in the interest of justice, so that appellant's punishment would be four years' confinement rather than ten years' confinement. Appellant contends that the trial court erred in imposing an illegal sentence below the statutory minimum. We agree.

■ When "regular" community supervision[10] is revoked, a trial court may proceed to dispose of the case as if there had been no community supervision. Tex. Code Crim. Proc. art. 42.12, § 23(a).[11] In other words, the trial court may impose the sentence originally assessed. *Guzman v. State*, 923 S.W.2d 792, 799 (Tex. App.—Corpus Christi 1996, no pet.). Or, if the trial court determines that the best interests of society and the defendant would be served by a shorter term of confinement, the trial court may exercise its discretion to reduce the term of confinement originally assessed to any term not less than the minimum prescribed for the offense. Tex. Code Crim. Proc. art. 42.12, § 23(a); *Cannon v. State*, 537 S.W.2d 31, 32 (Tex. Crim. App. 1976) (interpreting prior version of statute with substantially similar language and stating that any reduction is left to the

---

9. The threshold for first-degree felony theft has since been increased to $300,000. *See* Tex. Penal Code § 31.03(e)(7) (West Supp. 2016).

10. The term "regular" community supervision refers to community supervision in cases not involving deferred-adjudication community supervision.

11. Effective January 1, 2017, article 42.12, section 23 has been repealed and recodified as article 42A.755. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 1.01, 2015 Tex. Gen. Laws 2320, 2364 (codified at Tex. Code Crim. Proc. art. 42A.755).

"sound discretion" of the trial court). The trial court may not increase the term of confinement beyond the term originally assessed. *See* Tex. Code Crim. Proc. art. 42.12, § 23(a); *Weed v. State*, 891 S.W.2d 22, 23-24 (Tex. App.—Fort Worth 1995, no pet.).

Upon revocation of appellant's community supervision, the trial court had the option of imposing a sentence of ten years' confinement or of exercising the trial court's discretion to impose a sentence of imprisonment for a term of less than ten years, but no less than five years. *See* Tex. Code Crim. Proc. art. 42.12, § 23(a); Tex. Penal Code § 12.32(a); *Cannon*, 537 S.W.2d at 32; *Guzman*, 923 S.W.2d at 799; *Weed*, 891 S.W.2d at 23-24. By reducing appellant's sentence to four years' confinement, the trial court violated article 42.12, section 23(a) and imposed a sentence below the statutory minimum. *See* Tex. Code Crim. Proc. art. 42.12, § 23(a); Tex. Penal Code § 12.32(a). The trial court thus abused its discretion by imposing a sentence that was not within the range of five to ten years' confinement. *See* Tex. Code Crim. Proc. art. 42.12, § 23(a); Tex. Penal Code § 12.32(a); *Weed*, 891 S.W.2d at 23-24.

"A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). Any court with jurisdiction may notice and correct an illegal sentence, even if the defendant did not object in the trial court. *Id.* at 806 & n.6; *see also Baker v. State*, 278 S.W.3d 923, 926 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We hold that the trial court's reduced sentence of four years' imprisonment was illegal and therefore void. *See Mizell*, 119 S.W.3d at 806. While appellant did not object to this sentence at the trial court, this court has "inherent power" to set aside a void judgment. *Id.* at 807 n.17

(internal quotation omitted); *see also Speth v. State*, 6 S.W.3d 530, 532-33 (Tex. Crim. App. 1999) (a defendant has "an absolute and nonwaiveable right to be sentenced within the proper range of punishment established by the Legislature").

When faced with a void sentence, we are without authority to reform it. *See Baker*, 278 S.W.3d at 925-26; *see also Farias v. State*, 426 S.W.3d 198, 200 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ("If a sentence is void because it is below the minimum sentencing range, an appellate court has no authority to reform the judgment."). Because the reduced sentence is void, we reverse the trial court's reduced sentence, and remand the case for the trial court to (1) determine whether to impose a sentence of ten years' confinement or to exercise its discretion to impose a sentence for a term of less than ten years, but no less than five years, in compliance with article 42A.755(a) of the Code of Criminal Procedure, (2) pronounce the sentence in appellant's presence, and (3) sign a judgment revoking community supervision in accordance with the sentence determined by the trial court. *See* Tex. Code Crim. Proc. art. 42A.755(a).

We sustain appellant's first issue.

## C. Defendant's Presence at Punishment

The trial court orally pronounced appellant's sentence, in appellant's presence, to be four years' confinement. This sentence was recorded in the written judgment, but there is a handwritten notation on the judgment, crossing out the number "4" in "4 Years" and substituting "3," with initials beside the notation. This action, appellant contends, constituted an improper re-sentencing, done outside appellant's presence. *See* Tex. Code Crim. Proc. art. 42.03, § 1(a) (with limited exceptions, the sentence in a felony case must be pronounced

in the presence of the defendant). The State responds that there is insufficient indication in the record to support appellant's claim, or, alternatively, that the issue is moot. Because we already have reversed appellant's sentence based on her first issue, we need not address whether the change to the judgment constituted an improper re-sentencing.

We overrule appellant's second issue as moot.

### Conclusion

We overrule appellant's second and third issues and affirm the trial court's revocation of appellant's community supervision. Because we sustain appellant's first issue regarding the reduced sentence falling outside the statutory range of punishment, however, we reverse the trial court's reduced sentence, and remand the case to the trial court for further proceedings in accordance with the instructions set forth above.