**Opinion issued August 3, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00919-CR

_____

**BRYANT TREMAINE SINGLETON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 16CR3533**

---

## MEMORANDUM OPINION

Appellant Bryant Tremaine Singleton appeals the trial court's revocation of his community supervision in connection with his conviction for theft of property valued between $30,000 and $150,000.[1] Singleton argues that the trial court erred in

---

[1]     *See* TEX. PENAL CODE § 31.03(a), (e)(5).

revoking his community supervision because (1) the evidence conclusively demonstrated that Singleton did not have the ability to pay restitution and did not willfully fail to pay any restitution, fines, or fees; (2) the trial court failed to consider all six enumerated factors in Texas Code of Criminal Procedure article 42.037(h); and (3) the order requiring restitution constituted an illegal sentence due to the trial court's order directing the restitution to an entity that was not a "victim" pursuant to article 42.037. Because we conclude that the trial court did not abuse its discretion in revoking Singleton's community supervision on the basis that he failed to attend a required class, we affirm.

## Background

Singleton was indicted for theft of property valued between $30,000 and $150,000. He pleaded guilty pursuant to a plea agreement with the State to be placed on deferred adjudication for five years in exchange for complying with the terms of community supervision, including that he would pay $65,000 in restitution to the victim at a rate of $1,100 per month. Following a risk assessment analysis, the trial court modified the order of community supervision to add additional requirements, such as participating in drug screening, abstaining from alcohol, and completing an antitheft course and providing verification of completion to his community supervision officer.

2

Two months after Singleton entered into his plea agreement, the State moved to change the recipient of the restitution payments. The motion indicated that the victim had informed the District Attorney's Office that he would like to have restitution payments sent to a local charity. The trial court granted the motion, noting that "granting said motion would cause no harm to [Singleton] and would serve the interests of the community and justice." The trial court's order directed that restitution payments in Singleton's case be directed to the charity, stating, "This order shall in no way change the prior agreed upon obligations of [Singleton] and shall only change the recipient of payment of restitution by Galveston County."

The State filed a motion to revoke his community supervision in 2018, but after Singleton made a $10,000 payment, the State withdrew its motion to revoke. Singleton subsequently failed to meet additional terms of his community supervision, so the State filed a second motion to adjudicate his guilt and revoke his community supervision. The State alleged that Singleton failed to pay several different fees, failed to make his required restitution payments of $1,100 per month, and failed to attend the required antitheft course.

At the hearing on the State's motion to adjudicate, Singleton pleaded true to allegations that he failed to pay community supervision fees, fees to the Department of Court Services, payment of appointed attorney's fees, a crime stoppers' fee,

restitution, drug and alcohol testing fees and that he failed to attend the required antitheft course.

Probation officer G. Ramirez testified regarding her understanding of Singleton's current employment and income. She testified that he worked at least part-time providing tax services and that he worked running a restaurant. His expenses exceeded his income, and probation department records showed that he discussed his payment obligations with various supervising officers who had tried to "get him just to pay something." On one occasion, Singleton "stated that he was going to get money from a family friend, borrow the money to be able to pay the restitution fees." On another occasion, he explained that he would pay fees once he was paid for his work preparing taxes. Yet another time, Singleton reported that he had tried to make a restitution payment but "someone in the collections department told him he could not make a payment until after he went to court and set up a new payment plan." The community supervision officer called to check into this claim, and the collections employees said that it was not correct and that "they would never turn away a payment." Singleton reported on another occasion that he could possibly borrow the restitution money from a friend or family member, but he did not believe he should have to pay the entire amount of restitution that was ordered by the trial court.

Ramirez testified that Singleton had paid a total of $13,255 toward the $65,000 in restitution and that numerous smaller fees, such as the $25 crime stoppers' fee, remained unpaid. Specifically, she stated that Singleton had not made any payments when, in June 2018, the trial court "gave him 30 days to get in compliance with the restitution payments." He made a lump-sum payment of $10,000 several months later in December 2018. The trial court then denied a motion to revoke community supervision that had been pending at that time and continued Singleton on community supervision. He made two more payments—$500 in January 2019 and $1,645 in February 2019—prior to the State's filing of its current motion to revoke. Ramirez further testified that, in addition to the allegations to which Singleton had pled true, he had also failed to report a change of address.

Singleton testified that he did income tax services as his full-time job. He had also worked managing a restaurant owned by his girlfriend's family, but he lost that income when he was incarcerated and that caused some of the financial difficulties he was having. His monthly expenses, including $1,900 in monthly child support payments, exceeded his income by approximately $3,500. He testified that he was not intentionally failing to pay the ordered amounts, but he believed that he had originally misunderstood the terms of the restitution requirement. He stated that, given his current employment opportunities and income, he was left "robbing Peter to pay Paul" in order to meet his obligations. He asked that the trial court extend his

5

community supervision from five to ten years, allowing him to make smaller monthly payments.

Regarding his failure to attend the antitheft class, he testified that he was enrolled in the course in January 2019 but did not complete it in a timely fashion. He did not "put it on the back burner," he "just didn't complete it." He explained that he was busy with tax season and had a newborn child.

The trial court found all the alleged violations true and revoked Singleton's community supervision. The trial court sentenced him to six years' confinement. This appeal followed.

## Revocation of Community Supervision

In his first two issues, Singleton argues that the trial court abused its discretion in revoking his deferred adjudication community supervision.

## A. Standard of Review

"In a revocation proceeding, the trial court has discretion to revoke community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant violated a condition of his community supervision." *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012); *Davis v. State*, 591 S.W.3d 183, 189 (Tex. App.—Houston [1st Dist.] 2019, no pet.). This preponderance-of-the-evidence standard is met "when the greater weight of credible evidence before the trial court supports a reasonable belief that a condition of

community supervision has been violated." *Davis*, 591 S.W.3d at 189 (citing *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)).

When reviewing an order revoking community supervision, the sole question before this court is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Davis*, 591 S.W.3d at 188–89. "The central issue to be determined in reviewing a trial court's exercise of discretion in a [community supervision] revocation is whether the defendant was afforded due process of law." *Davis*, 591 S.W.3d at 189 (quoting *DeGay v. State*, 741 S.W.2d 445, 450 (Tex. Crim. App. 1987)).

There are three limits to a trial court's discretion to revoke supervision: (1) the State must prove at least one violation of the terms and conditions of community supervision (2) an appellate court will review the trial court's decision for an abuse of discretion; and (3) federal due process requires that a trial court consider alternatives to imprisonment before incarcerating an indigent defendant who is unable to pay amounts due under community supervision. *Davis*, 591 S.W.3d at 189 (citing *Lombardo v. State*, 524 S.W.3d 808, 812 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

Only one sufficient ground is necessary to support a trial court's decision to revoke community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *Davis*, 591 S.W.3d at 189; *see also Garcia v. State*, 387 S.W.3d 20, 26

(Tex. Crim. App. 2012) (stating proof of single violation will support revocation). And a plea of true, standing alone, is generally sufficient to support revocation. *See Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. [Panel Op.] 1979); *Cazarez v. State*, 606 S.W.3d 549, 559 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Perry v. State*, 367 S.W.3d 690, 693 (Tex. App.—Texarkana 2012, no pet.).

## B.     Sufficient Grounds to Support Revocation

In his first issue, Singleton argues that the trial court erred in revoking his community supervision because "[t]he evidence conclusively demonstrated that [Singleton] did not have the ability to pay the $65,000 in restitution and that [he] did not willfully fail to pay any restitution, fines or fees." In his second issue, Singleton argues that the trial court erred in failing to consider all the factors set out in Code of Criminal Procedure article 42.037(h), which lists the factors that a trial court "shall consider" in determining whether to revoke community supervision for the failure to comply with a restitution order.[2] He does not challenge, however, the

---

[2]     Article 42.037(h) provides:

> If a defendant is placed on community supervision or is paroled or released on mandatory supervision, the court or the parole panel shall order the payment of restitution ordered under this article as a condition of community supervision, parole, or mandatory supervision. The court may revoke community supervision and the parole panel may revoke parole or mandatory supervision if the defendant fails to comply with the order. In determining whether to revoke community supervision, parole, or mandatory supervision, the court or parole panel shall consider:

> (1) the defendant's employment status;

remaining bases alleged in the motion to revoke and found true by the trial court in its revocation order.

The record reflects that Singleton entered into a plea agreement with the State in which he agreed to pay restitution and certain fees and otherwise fulfill the terms of his community supervision in exchange for receiving deferred adjudication of his theft offense. Among the requirements of his community supervision was the obligation to attend an antitheft class.

The State alleged in its motion to revoke that Singleton failed to make appropriate payment of restitution and other fees, and it alleged that he failed to attend the required class. Singleton pleaded true to the allegations in this motion to revoke, including the allegation that he failed to attend the antitheft class. The trial court found all of the allegations true, adjudicated Singleton's guilt, and revoked his community supervision.

---

(2) the defendant's current and future earning ability;

(3) the defendant's current and future financial resources;

(4) the willfulness of the defendant's failure to pay;

(5) any other special circumstances that may affect the defendant's ability to pay; and

(6) the victim's financial resources or ability to pay expenses incurred by the victim as a result of the offense.

TEX. CODE CRIM. PROC. art. 42.037(h).

9

Singleton has, thus, failed to challenge all the bases underlying the trial court's decision to revoke his community supervision. His plea of true to the allegation that he failed to attend the required antitheft class does not implicate his ability to pay restitution or fees. That single finding by itself, supports the trial court's decision to revoke his community supervision. *See Smith*, 286 S.W.3d at 342 (holding that only one sufficient ground is necessary to support trial court's decision to revoke community supervision); *Cazarez*, 606 S.W.3d at 559 (holding that plea of true, standing alone, is generally sufficient to support revocation). Accordingly, we need not consider his arguments that the evidence conclusively established that he was unable to pay the ordered restitution and that that trial court failed to consider all the factors set out in article 42.037(h) in order to conclude that sufficient evidence supported the trial court's revocation order.

We overrule Singleton's first and second issues.

## C.    Restitution Order

In his third issue, Singleton argues that the order of restitution was "an illegal sentence due to the subsequent redirection of restitution to an entity which was not a 'victim' for purposes of" article 42.037. We observe, however, that article 42.037(b)(3) provides:

> If the victim or the victim's estate consents, the court may, in addition to an order under Subdivision (2), order the defendant to make restitution by performing services instead of by paying money or make

restitution to a person or organization, other than the compensation to victims of crime fund, designated by the victim or the estate.

TEX. CODE CRIM. PROC. art. 42.037(b)(3).

Here, the record reflects that the victim consented to the trial court's order directing that restitution payments be paid to a charitable organization designated by the victim. In light of the provisions in article 42.037(b)(3), permitting the trial court to order restitution to be paid to some party other than a "victim," we cannot conclude that the order of restitution became illegal or that the trial court abused its discretion in changing the recipient of the restitution at the victim's request.

We overrule Singleton's third issue.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Kelly, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).