**Artis Deryle WHITEHEAD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55024.**

Court of Criminal Appeals of Texas.

Oct. 5, 1977.

State's Motions for Rehearing Denied Nov. 2, 1977.

---

Floyd W. Freed, III, Houston, for appellant.

Carol S. Vance, Dist. Atty., William W. Burge and R. P. Cornelius, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from an order revoking probation.

Upon a plea of guilty to the trial court, appellant was convicted of forgery. Punishment was assessed at ten (10) years in the Texas Department of Corrections. Imposition of sentence was suspended and ap-

pellant was placed on probation on August 19, 1975.

Among the terms and conditions of his probation, appellant was to:

"(a) Commit no offense against the laws of this state or any other state or of the United States . . .

\* \* \* \* \* \*

"(d) Report to the Adult Probation Officer of Harris County, Texas, as directed; on the 15th day of September, 1975 and on the 15th day of each month thereafter, during probation . . .

\* \* \* \* \* \*

"(g) Remain within the limits of Harris County, Texas, and change place of residence only with permission of the PROBATION OFFICER . .

\* \* \* \* \* \*

"(i) Pay [his] fine, if one be assessed . . and make restitution or reparation in any sum that the court shall determine, to-wit: . . . [thereafter the court listed the amount of payments due]"

On June 11, 1976, the State filed an amended motion to revoke appellant's probation on the grounds that he had violated the terms and conditions of his probation. A revocation hearing was held, and the trial court entered an order revoking probation on July 16, 1976. In its findings of fact and conclusions of law filed July 20, 1976, the trial court found that appellant had failed to report to his probation officer on April 22, 1976, as instructed; that he was $120.00 in arrears in his restitution payments; that on May 6, 1976 he moved from his place of residence without the court's permission or permission from his probation officer; that he "took without permission from his mother, BONNIE BECKHAM, two checks and cashed them for $45.00 and $50.00."

In his first ground of error, appellant contends that the trial court abused its discretion in basing its revocation order on the failure of appellant to report to his

probation officer. In its order of probation, the court directed appellant to report to the Adult Probation Officer of Harris County on the 15th day of September 1975, and thereafter on the 15th day of each month during the term of probation. There was no requirement that appellant report on any other dates, nor was there any provision in the order permitting the probation officer to require appellant to report more frequently.

The amended motion to revoke probation, however, alleged that appellant had violated the terms of his probation by failing to report on April 22, 1976, and the court sustained a violation on this ground. It appears, however, that appellant was not obligated to report on April 22, 1976, even though Bruce Corbin, appellant's probation officer, testified that he had heard from another probation officer that appellant had been instructed to report on that date. Since appellant was not obligated to report on that date, the finding by the court that he did not report on that date cannot sustain a finding of a violation of probation conditions by appellant.

In *Herrington v. State,* 534 S.W.2d 331 (Tex.Cr.App.1976), we held that where the probation order directed appellant to report "at least once a month," an allegation that appellant had failed to report on a specific date could not sustain a finding by the court that he had violated his probation conditions absent an allegation and proof that he had failed to report monthly. We held that the probation condition by the court,

" . . . sufficiently required appellant to report not less than once per month. [citations omitted] However, it did not delegate authority to the probation officer to require weekly reports, and *any such instructions given by the officer were beyond his legal authority and of no force. Parsons v. State,* Tex.Cr.App., 513 S.W.2d 554; *DeLeon v. State,* Tex.Cr. App., 466 S.W.2d 573; *Campbell v. State,* Tex.Cr.App., 420 S.W.2d 715." (emphasis added.) 534 S.W.2d 331, 334.

Although Corbin testified that he had had appellant reporting on a weekly basis, he had no authority to require appellant to report so often, and absent an allegation by the State and finding by the court that appellant had failed to make *monthly* reports, there is no violation of appellant's probation conditions.

■ In the second ground of error, appellant contends that the trial court abused its discretion in finding that appellant had violated the terms of his probation in failing to make restitution payments. It is well settled that absent a showing of a probationer's ability to make the restitution payments, and that his failure was intentional, it is an abuse of discretion for a court to revoke probation on this failure to make payments. *Curtis v. State,* 548 S.W.2d 57 (Tex.Cr.App.1977); *Fletcher v. State,* 547 S.W.2d 634 (Tex.Cr.App.1977); *Herrington v. State,* 534 S.W.2d 331 (Tex.Cr.App.1976). Here, there was no showing that appellant was in any way able to make the restitution payments. In fact, the testimony of Corbin, Bonnie Beckham, appellant's mother, and appellant himself showed that appellant was not employed during this period of non-payment and thus had no income from which to make the payments as he was required. The finding by the court that appellant's non-payment of restitution was a violation of probation conditions cannot be sustained.

In appellant's third ground of error, he contends that the evidence is insufficient to prove that he changed his residence without the permission of his probation officer, in violation of his probation conditions. Appellant was first given permission by his probation officer to live with his mother, on Harley Street. Corbin testified that he had never given appellant permission to change his residence from that address. There was also undisputed evidence that appellant went to his cousin's house on Bissonnet Street and stayed there for some undeter-

mined period of time less than two weeks.[1] Appellant admits that he stayed at his cousin's house during this period but he denies that he changed his residence or ever intended to change it.

Bruce Corbin testified that he learned of appellant's absence from his mother's home May 17, 1976, when she called the probation office. He further stated that he never attempted to locate him at the Bissonnet address. Corbin further stated that when he talked to appellant on the day he was arrested appellant admitted that he had been living at the Bissonnet address. Beckham, appellant's mother, testified that at some time during this two week period appellant was living with his cousin. She stated that appellant left property at her house on Harley Street, and that he returned to her house during this period but that he did not stay there.

Appellant admitted that he went to his cousin's house. He testified that he did so for the sole purpose of getting a job in carpentry with his cousin when an expected vacancy arose. He stated that he believed that a partner in his cousin's business was about to die and that he could get a job as "helper" if he were there. When questioned about why he did not return to his mother's house when he did not get a job, he stated in response, "There was some confusion between her and my father." He further testified that he did not intend his cousin's house to be a permanent address and that he still considered the Harley address to be his permanent address.

There is no question that appellant stayed away from his mother's house for a period of time. However, appellant argues that there is insufficient evidence to show that he actually changed his residence. In *Whitney v. State,* 472 S.W.2d 524 (Tex.Cr. App.1971), this Court clearly distinguished between "residence" and bodily presence. We said,

1. There was no evidence introduced to show how long appellant was at his cousin's house. However, the court specifically found that he moved on May 6, 1976, and appellant was arrested and incarcerated on May 20, 1976, so he could not have been at his cousin's house longer then fourteen days.

"Residence is an elastic term. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. [Citation omitted] Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide, at that moment the residence is fixed and determined . . ."

■ In *Whitney*, the probationer went to Florida to seek employment and spent approximately three nights in a motel there. Even though he was seeking employment and probably would have made Florida his residence had he found a job, we held that there was insufficient evidence to show that he actually changed his residence. In the instant case, there is ample evidence that appellant was away from his mother's house for a period of fourteen days or less, but we hold that there is insufficient evidence to prove that appellant changed his residence. There is no evidence regarding his intent to make the Bissonnet address his residence, and since he did not move his belongings, a stay of less than two weeks is not, by itself, circumstantial evidence of an intention to create a new residence. While a lengthy stay, or moving all of one's property could constitute circumstantial evidence of a change of residence, we have neither here.

■ The State, in arguing that the evidence supports the trial court's finding that appellant changed his residence, relies on a statement that appellant made at the hearing, as an admission by appellant. On cross-examination, the following testimony was given during a discussion of appellant's failure to make restitution payments:

"Q  [Prosecution]: The fact is you can't make it on probation; can you?

"A  [Appellant]: I can make it.

"Q  You haven't made it yet. You can't get a job; you can't keep one; can you?

"A  Yes, sir. I can keep a job.

"Q  You can't stay out of trouble either; can you?

"A  I can stay out of trouble. I did stay out except for failing to report and moving without permission my place of residence. If that's getting in trouble, well, I did that, yes.

"Q  You just didn't really consider that a real important condition of your probation; did you?

"A  Yes, sir. I considered it important.

"Q  You just can't do that because you don't think it is important?

"A  Yes, I think it's important.

"Q  You think it's important now when you're in court and the judge has the authority to send you to the penitentiary, but you didn't think it was important prior to today?

"A  Yes, I do.

"Q  You just flat didn't do it then?

"A  Right."

When the prosecutor and appellant refer to "it," it is unclear whether they refer to appellant's failure to make restitution payments, or to report, or the change of residence, or to appellant's having "gotten in trouble" with his probation officer in the fist place.

When appellant stated, "If that's getting in trouble, well, I did that, yes," he does not appear to have admitted that he changed his residence, but rather he is restating the charges against him and admitting that he has "gotten into trouble" over his probation conditions.[2]

Further, even had appellant admitted that he "changed his residence," that alone would not be sufficient evidence to support the alleged violation. "Residence" is a legal conclusion, a matter of law, to be determined from facts. An admission of a legal conclusion is not necessarily an admission of underlying facts.

**2.** Also, we do not know what appellant meant by the statement about "moving without permission my place of residence." Being of limited education, it is likely that he was adopting the prosecutor's language and stating the issue in the terms that the prosecutor had used, not distinguishing between bodily presence in a place and residence.

■ Viewing all the evidence in the light most favorable to the court's finding, we cannot conclude that there is sufficient evidence to support the finding that appellant changed his residence. We must conclude, therefore, that the court abused its discretion in basing its revocation order on this ground.[3]

■ Appellant finally contends that the trial court abused its discretion in revoking appellant's probation on the ground that he committed an offense against the laws of this State, in violation of his probation conditions.

The State's motion to revoke alleged that appellant "took without permission from his mother, checks from her personal checking account and wrote two checks for $50.00 and one check for $45.00." Appellant, by proper and timely objection,[4] excepted to the allegation in that it was so vague as to not inform appellant of the offense upon which he was called to defend. He argues that the charge was not sufficient to state any offense under the Penal Code and that he did not know whether he was charged with theft, forgery or passing a forged instrument.

We have repeatedly held that allegations in a motion to revoke probation do not require the same particularity or precision as an indictment or information, yet these allegations should give the probationer fair notice of the charges against him upon which he is called to defend or he is denied the rudiments of due process of law. *Garner v. State,* 545 S.W.2d 178 (Tex.Cr.App. 1977); *Tamez v. State,* 534 S.W.2d 686 (Tex. Cr.App.1976); *Acton v. State,* 530 S.W.2d 568 (Tex.Cr.App.1976).

In *Roberson v. State,* 485 S.W.2d 795 (Tex.Cr.App.1972) we held that where the State's motion to revoke probation alleged that the probationer "was arrested in Anderson County driving a stolen automobile," this language was not sufficient to give notice of what offense the probationer was alleged to have committed in violation of his probation conditions. In *Garner v. State,* 545 S.W.2d 178 (Tex.Cr.App.1977), we held that an allegation in a motion to revoke probation that alleged that the probationer had "committed the offense of theft in Harris County" was not sufficient to inform him what offense he was charged with, and thus he could not prepare an adequate defense to the charge.

In appellant's case, the motion to revoke was insufficient to inform him what particular offense with which he was charged if indeed he was charged with an offense at all. Since appellant raised this issue to the trial court before the proceedings began, we conclude that the court erred in overruling appellant's exception to the motion to revoke.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, Judge, dissenting.

The judgment should be affirmed because the trial judge did not abuse his discretion in revoking probation. The evidence was sufficient to show that appellant changed his residence without permission. Under the majority opinion, all a probationer has to do to defeat revocation on the ground of changing his residence without permission is to testify that he did not intend to change it permanently.

---

3. We also point out that in *Whitney v. State, supra,* we noted that language in a probation condition which is identical to the language in this case was ambiguous. We stated that, depending on the meaning given to the term "residence," the language could be read to mean three different things. While this was not controlling in *Whitney,* and is not in the instant case, if this Court finds the condition ambiguous, it is likely that some probationers do too.

4. Appellant raised this objection to the court before the hearing in a written notice to set aside the motion to revoke and argued the motion before the revocation proceedings began. Thus, *Tone v. State,* 505 S.W.2d 300 (Tex. Cr.App.1974) and *Dempsey v. State,* 496 S.W.2d 49 (Tex.Cr.App.1973) are not controlling. We held therein that motions to quash the State's motion to revoke on the same grounds as appellant argues were not timely where they were made after the proceedings had begun.

Further, the ground that he took two checks without the consent of his mother and cashed them was sufficient for the judge to revoke probation.

ODOM, J., joins in this dissent.