

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0377-13

**RAIMOND KEVON GIPSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### JEFFERSON COUNTY

**JOHNSON, J., filed a concurring opinion.**

## C O N C U R R I N G   O P I N I O N

Two years after appellant was placed on community supervision, the state filed a motion to revoke his supervision alleging, among other violations, appellant's failure to pay court-assessed fees. The state's motion did not specify which of the various assessments appellant failed to pay; it simply alleged that he "has failed to pay court assessed fees as directed by the Court . . . ." Because both parties' briefs assume that appellant's claim turns on the applicability of Article 42.12, subsection 21(c), to fines and crime-stoppers fees and because the state petitioned for review on only

that specific issue,[1] I assume that appellant failed to pay the fine and crime-stoppers fee.

At the hearing on the motion to revoke, the trial court heard evidence on the failure-to-pay allegation and on another, non-monetary violation. Appellant plead true to only the alleged failure-to-pay violation, the state dropped its other alleged violations, the trial court granted the state's motion to revoke appellant's supervision and sentenced him to eight years in prison. Appellant timely appealed.

Without reaching the state's preservation-of-error arguments, the court of appeals reversed, concluding that the trial court had abused its discretion by revoking appellant's community supervision in the absence of any evidence of appellant's willful refusal to pay. *Gipson v. State* (*Gipson I*), 347 S.W.3d 893, 897 (Tex. App.—Beaumont 2011).[2]

## Analysis

### A. Section 21(c)

Section 21(c) of Article 42.12, Texas's "ability-to-pay" statute, sets out:

> In a community supervision revocation hearing at which it is alleged only that the defendant violated the conditions of community supervision by failing to pay compensation paid to appointed counsel, community supervision fees, or court costs, the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.

Our rules of statutory construction mandate that we look first to a statute's plain meaning. *Boykin*

---

[1] "Does Texas' ability-to-pay statute, TEX. CODE CRIM. PROC. art. 42.12 § 21(c), require the State to prove that Appellant's failure to pay a fine and crime stoppers fee as a condition of community supervision was willful when neither is encompassed or included in the statute's plain text?"

[2] We granted the state's petition for discretionary review and remanded so that the appellate court could consider the state's procedural arguments. *Gipson v. State* (*Gipson II*), 383 S.W.3d 152, 159 (Tex. Crim. App. 2012). On remand, the court of appeals, finding that sufficiency issues could not be forfeited, again held that the trial court had abused its discretion by revoking appellant's community supervision without evidence that his failure to pay was willful and in spite of a financial ability to do so. *Gipson v. State* (*Gipson III*), 395 S.W.3d 910 (Tex. App.—Beaumont 2013). The state timely appealed.

*v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We look beyond a statute's literal text only when the "plain language would lead to absurd consequences that the Legislature could not possibly have intended." *Id.* (citing *Faulk v. State*, 608 S.W.2d 625, 630 (Tex. Crim. App. 1980)).

Appellant and the state both assume that Section 21(c) governs the decision in this case because appellant's community supervision was revoked solely for his failure to pay a fine and crime-stoppers fee. However, the plain language of that statute makes clear that the provision does not apply to appellant's case. The legislature's placement of the word "only" at its current location within the sentence indicates the legislature's intent for this statute to apply in the very limited circumstances of when failure to pay is the state's only allegation at the revocation hearing.[3] The legislature could just as easily have left "only" out of that sentence so that the provision would cover revocation hearings "at which it is alleged that the defendant violated . . . ." Alternatively, the legislature could have written the statute to require consideration of a defendant's ability to pay when his community supervision is revoked only for failure to pay, regardless of whether he was initially charged with multiple violations.

Although appellant's community supervision was revoked solely on the basis of his plea of "true" to the state's failure-to-pay allegation, the state also alleged that appellant had committed the offense of theft from a person and failed to avoid contact with the victim of his probated offense, and that allegation was litigated during the hearing on the motion to revoke. Therefore, I conclude that Section 21(c) does not apply to the trial court's revocation of appellant's community supervision.

---

[3] Section 21(c) would apply if the state's motion to revoke alleged violations other than failure to pay but the state either withdrew those allegations before the hearing on the motion to revoke or did not litigate the other allegations during the hearing. Other allegations were litigated during the hearing on the state's motion to revoke appellant's community supervision.

Because Section 21(c) does not apply, the trial court was entitled to revoke appellant's community supervision under the general revocation statute, Section 21(b). In this section, the legislature's chosen language indicates that it was aware of the considerations in revoking a defendant's community supervision and decided to make mere failure to pay a revocable offense. I infer that the legislature intended not to include the language from Section 21(c)—"the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge"—from the fact that it did include the same phrase in the neighboring subsection. *See Campbell v. State*, 49 S.W.3d 874, 878 (Tex. Crim. App. 2001) (legislative failure to include language used elsewhere in statutory scheme indicated exclusion was intentional). The ability-to-pay requirements in Sections 11(b) and 21(c) do not impose similar mandates on the general revocation provision.

I would therefore follow the statute's plain language and hold that the ability-to-pay provision applies only to cases in which the state alleges, at the hearing on the motion to revoke, only that the defendant violated the terms of his community supervision by failing to make payments. Such an interpretation does not produce an absurd result. *Boykin v. State*, 818 S.W.2d at 785 ("[W]here application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally."). The state is permitted to drop other allegations in exchange for a defendant's plea of "true" to the allegation that he failed to make payments. Such an agreement conserves judicial and prosecutorial resources by narrowing the scope of a hearing and benefits the defendant by limiting his exposure to additional allegations.

**B. Other Potentially Relevant Provisions**

There are many provisions in the Code in which the legislature mentions ability to pay. Dissenters may argue, as the court of appeals did, that we should read this collection of provisions as a whole and find a scheme of requiring trial courts to consider defendants' ability to pay any time financial responsibilities arise. But a careful analysis of this broad framework shows that each of these provisions applies in a particular, well-defined set of circumstances. Most of these provisions apply at the time that community supervision is imposed. They require consideration of a defendant's financial situation only when a judge assesses certain payments, and the plain language states that these provisions apply to the determination of whether to order a defendant to make these payments and do not address what must occur in a revocation hearing if the defendant has failed to do so. The requirement that judges consider defendants' ability to pay explicitly applies at a particular phase of the proceedings, and we should not rewrite statutes. Because the defined circumstances are not present in this case, the following statutes do not apply to appellant.

Article 42.0371(a) mandates that courts order defendants convicted of kidnapping or abducting children[4] to pay restitution to cover the victim's rehabilitation if the victim is less than seventeen years old, and the courts are required to consider "the financial circumstances of the defendant" before issuing the restitution order. TEX. CODE CRIM. PROC. art. 42.0371(c). The language of Article 42.0372 is identical to that of Article 42.0371 except that it applies to defendants convicted of human trafficking or compelling prostitution[5] of victims younger than eighteen.

Courts may also require a defendant to reimburse the county if the defendant is confined in county jail as a condition of community supervision. TEX. CODE CRIM. PROC. art. 42.038(b).

---

[4] Chapter 20 of the Penal Code or Section 25.03, 25.031, or 25.04 of the Penal Code.

[5] Under Section 20A.02 or 43.05(a)(2) of the Penal Code.

However, judges are required to consider each defendant's financial circumstances in determining whether to order reimbursement. TEX. CODE CRIM. PROC. art. 42.038(c), (d).

Article 42.037(h) expressly authorizes a court to revoke a defendant's community supervision for failure to make restitution payments, but it requires the court to consider several factors in determining whether to revoke, including the willfulness of the defendant's failure to pay and his ability to pay.[6] The legislature did not include any outcome-determinative language with any of these factors—the court merely needs to consider them.

Article 42.12, subsection 11(a), lists permissible conditions of community supervision, including various assessments. Art. 42.12, § 11(a)(18)-(21). Subsection 11(b) limits assessments to fines, court costs, restitution, "and other conditions related personally to the rehabilitation of the defendant or otherwise expressly authorized by law" and requires that courts consider a defendant's ability to pay before ordering him to do so.

Under Article 42.12, section 13(i), courts may require a defendant on community supervision associated with charges of intoxication offenses to absorb the costs of "a deep-lung breath analysis

---

[6] Article 42.037(h) provides:

If a defendant is placed on community supervision or is paroled or released on mandatory supervision, the court or the parole panel shall order the payment of restitution ordered under this article as a condition of community supervision, parole, or mandatory supervision. The court may revoke community supervision and the parole panel may revoke parole or mandatory supervision if the defendant fails to comply with the order. In determining whether to revoke community supervision, parole, or mandatory supervision, the court or parole panel shall consider:
    (1) the defendant's employment status;
    (2) the defendant's current and future earning ability;
    (3) the defendant's current and future financial resources;
    (4) the willfulness of the defendant's failure to pay;
    (5) any other special circumstances that may affect the defendant's ability to pay; and
    (6) the victim's financial resources or ability to pay expenses incurred by the victim as a result of the offense.

mechanism" on his vehicle as a condition of community supervision. If the defendant cannot afford to pay for the device, the court is permitted to impose a payment schedule. TEX. CODE CRIM. PROC. art. 42.12 § 13(i).

Article 42.12, section 14, lists special conditions available to courts when granting community supervision to defendants convicted of child abuse and family-violence offenses. Subsection (c-2) provides that the trial court may require a defendant to attend counseling and pay for it, "on a finding that the defendant is financially able to make payment. If the court finds that the defendant is unable to make payment, the court shall make the counseling sessions or enrollment in the program available without cost to the defendant." TEX. CODE CRIM. PROC. art. 42.12 § 14(c-2).

There are two Sections 14 in Article 42.12. The second Section 14 is titled "Substance Abuse Felony Program." This section allows a trial court to order a defendant to spend time at an inpatient substance-abuse treatment facility as a condition of his community supervision, but it may also order the defendant to "pay a fee in an amount established by the judge for residential aftercare required as part of the treatment plan." TEX. CODE CRIM. PROC. art. 42.12 §§ 14(a), 14(c)(2). However, in establishing these fees, the judge must consider the defendant's other financial obligations that are associated with his community supervision. TEX. CODE CRIM. PROC. art. 42.12 § 14(e).

The following statutes could apply to appellant, but to no avail as, with a few exceptions, these provisions also apply only at the time that community supervision is imposed.

Article 26.05, section (g), states that, before the trial court orders a defendant to pay attorney's fees, it is required to find that appellant is able to make those payments.

Courts are permitted to order defendants convicted of felonies to repay crime-stoppers

organizations. TEX. CODE CRIM. PROC. art. 37.073(a). Before doing so, judges are required only to consider defendants' ability to make payments and the degree of financial hardship imposed on defendants by those obligations. TEX. CODE CRIM. PROC. art. 37.073(b)(1).

Once a trial court has decided to revoke a defendant's community supervision, Section 23 of Article 42.12 allows the judge to "proceed to dispose of the case as if there had been no community supervision." TEX. CODE CRIM. PROC. art. 42.12 § 23(a).[7] The judge could have placed appellant back on community supervision if he thought it "in the best interest of justice, the public, and the defendant," TEX. CODE CRIM. PROC. art. 42.12 § 3(a), but he did not. He did, however, apparently find that reducing appellant's sentence was in the best interests of appellant and society. TEX. CODE CRIM. PROC. art. 42.12 § 23(a).

Article 43.03 allows a trial court to confine a defendant for failure to pay a fine, even if he was not also sentenced to any period of imprisonment. TEX. CODE CRIM. PROC. art. 43.03(a). The court must only consider the defendant's indigence, good faith efforts to pay (or lack thereof), and whether making the payments placed an undue financial burden on the defendant; it is not prohibited from confining a defendant for failure to pay a fine. TEX. CODE CRIM. PROC. art. 43.03(d).

Article 43.091 provides:

A court may waive payment of a fine or cost imposed on a defendant who defaults in payment if the court determines that:
    (1) the defendant is indigent; and
    (2) each alternative method of discharging the fine or cost under Article 43.09 would impose an undue hardship on the defendant.

---

[7] The entirety of Section 23(a) reads: "If community supervision is revoked after a hearing under Section 21 of this article, the judge may proceed to dispose of the case as if there had been no community supervision, or if the judge determines that the best interests of society and the defendant would be served by a shorter term of confinement, reduce the term of confinement originally assessed to any term of confinement not less than the minimum prescribed for the offense of which the defendant was convicted. The judge shall enter the amount of restitution or reparation owed by the defendant on the date of revocation in the judgment in the case."

This provision offers courts substantial latitude as to an indigent defendant, but it does not impose an obligation on the trial court and does not prohibit the trial court from revoking appellant's community supervision for failure to pay a fine.

There are also provisions in the Code of Criminal Procedure, other than in Article 42.12, that do not require a consideration of a defendant's ability to pay before imposing financial obligations: *See, e.g.*, Penal Code § 12.43(c) (repeat and habitual offenders—three or more previous convictions of class C misdemeanor) and Article 42.12, § 15A(1)-(4) (testing for addiction, a psychological evaluation, participate in a drug or alcohol abuse treatment program if the tests show it is necessary, and to pay the costs of that testing and treatment).

Judges who grant community supervision are obligated to assess a community-supervision fee of between twenty-five and sixty dollars per month. TEX. CODE CRIM. PROC. art. 42.12 § 19(a). This fee is mandatory. If the judge finds that paying the fee would cause the defendant significant financial hardship, the judge may reduce, waive, or temporarily suspend the fee, but he is not obligated to do so. *Id.*

Section 19(e) imposes a mandatory five-dollar-per-month community-supervision fee payable to the community-supervision office that is supervising a defendant. TEX. CODE CRIM. PROC. art. 42.12 § 19(e). The legislature made no mention of the defendant's ability to pay.

If a court finds that a defendant violated a condition of his community supervision, the judge may, but is not required to, extend the period of community supervision if the defendant has failed to pay previously assessed fines, costs, or restitution and the judge thinks that extending the period of community supervision will increase the likelihood that the defendant will fully satisfy those debts. TEX. CODE CRIM. PROC. art. 42.12 § 22(c). This provision allows courts to consider

defendant's financial circumstances, but it allows them to do so in an attempt to find out how best to recover all of the money defendants owe rather than protect a defendant from being incarcerated.

After finding that a defendant has violated a condition of his community supervision, the court may also impose a sanction on the defendant in the form of an increased fine. TEX. CODE CRIM. PROC. art. 42.12 § 22(d). There is no mention at all in this section of the defendant's ability to pay.

> Most damaging to appellant's arguments is Article 42.12, section 11(b-1):
>
> A defendant's obligation to pay a fine or court costs as ordered by a judge exists independently of any requirement to pay the fine or court costs as a condition of the defendant's community supervision. A defendant remains obligated to pay any unpaid fine or court cost after the expiration of the defendant's period of community supervision.

This section appears to give the state the right to sue a defendant civilly for unpaid fines, even after the state's authority to request revocation of community supervision has ended. Very clearly, a defendant's ability to pay will be an issue in such a suit, yet there is no mention of such an ability in the statute. All in all, the legislature seems to be well aware of how to require trial courts to consider defendants' ability to pay when handling financial obligations.

### C. Miscellaneous Concerns

When this case was previously before us, we indicated that, if Texas statutes do not require the state to prove a defendant's ability to pay, state common law might.[8] *Gipson II*, at 158-59. We

---

[8] Before 1977, common law plainly required that the state show that a defendant was able to pay and that his failure to do so was intentional. *Gipson II*, at 158 (citing *Whitehead v. State*, 556 S.W.2d 802, 805 (Tex. Crim. App. 1977)). In 1977, the legislature amended the Code of Criminal Procedure to make inability to pay an affirmative defense to revocation, and it became unclear whether the state was still required to make that common-law showing. *Id.*, at 159. When the legislature amended the provision in 2007 to create the current Section 21(c), it did away with the affirmative defense entirely as well as the intentionality requirement for the payments listed in that subsection. *Id.*, at 159 n.3.

still do not need to address this issue because it falls outside the bounds of the narrow statutory question with which we are presented.

Finally, this case appears likely to be one of "no harm, no foul." The state chose to urge revocation on the failure-to-pay violation during appellant's revocation hearing, but proving an allegation by a preponderance of the evidence[9] is a much lower burden for the state than doing so beyond a reasonable doubt. Either of the state's other two allegations, theft and violation of a no-contact order, if true, would have undeniably entitled the court to incarcerate appellant. Appellant's judicial confession to his failure to pay made that allegation the easiest for the state to prove, but it was apparently not the only option available to the state. Such situations may be precisely what the legislature was thinking of when it placed the word "only" in its current location within the grammatical structure of Article 42.12, section 21(c).

## Conclusion

I would hold that the ability-to-pay statute does not apply to appellant's case. The default provision for revoking community supervision did not require an inquiry into appellant's ability to pay. No other statutes require consideration of a defendant's ability to pay fines and Crime-Stopper fees upon revocation, and still other statutes explicitly allow an increased fine or specify a continuing obligation to pay fines even after community supervision has expired, both without inquiry into a defendant's ability to pay. I concur in the judgment of the Court.

Filed: April 16, 2014
Publish

---

[9] *Solis v. State*, 589 S.W.2d 444, 447 (Tex. Crim. App. [Panel Op.] 1979).