Opinion filed September 2, 2021



**In The**

# Eleventh Court of Appeals

_____

## No. 11-19-00319-CR

_____

## HAL WAYNE HONEA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. 25291**

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Hal Wayne Honea, Appellant, alleging that, on or about March 1, 2018, while knowing that he was a person required to register under the Sex Offender Registration Program, Chapter 62 of the Texas Code of Criminal Procedure, he failed to register with the local law enforcement authority in Cisco, Texas, namely the Cisco Police Department, while having a reportable conviction for the offense of aggravated sexual assault and residing in Cisco, Texas, for more

than seven days. The indictment included habitual offender paragraphs for two prior felony convictions. Appellant waived his right to trial by jury. A bench trial resulted in a verdict of guilty, a finding of true to the two enhancement paragraphs, and a punishment assessed by the trial court of thirty years in the Correctional Institutions Division, TDCJ. We affirm.

*Issues*

On appeal, Appellant raises two issues arguing that (1) the evidence was insufficient to support his conviction and (2) as applied to Appellant, the statute is unconstitutionally vague.

*Background Facts*

Appellant was first required to register as a sex offender in 2011, with the obligation to verify registration annually. As of January 2018, Appellant was living with his mother and brother with a registered address of 1210 West 5th Street in Breckenridge, Texas. Appellant later updated his registered address to 1005 South Cutting in Breckenridge, Texas.

In April 2018, Special Agent Jason Graham with the Department of Public Safety, Criminal Investigations Division, was investigating sex offender compliance in Stephens County. He had previously received information that Appellant was not living at his registered address in Breckenridge but was instead living in Cisco. On April 23, 2018, Agent Graham conducted his compliance check at Appellant's registered address on South Cutting. There were both a house and an RV at the address, but Officer Graham was informed that Appellant lived in the RV.

When Agent Graham knocked on the door of the house, a man answered who identified himself as Appellant's son. Just then, Appellant drove up in his vehicle, and they then went inside the RV to conduct the compliance check. Appellant told Agent Graham that he had recently married and that he and his wife, Linda, lived in the RV. However, Agent Graham testified that when he looked around the RV as

2

part of the compliance check, he found only three sets of clothes in a closet and no female clothes.

In response to questioning from Agent Graham about actually living in Cisco, Appellant said that he would love to live there and that his wife had a house there, but that a city ordinance prevented him from doing so. However, Appellant also said that he was spending two days at his registered Breckenridge address and two days in Cisco with his wife at her house. In addition, Agent Graham testified that as part of the compliance check, he went over all of Appellant's terms and conditions as a registered sex offender and confirmed that Appellant understood them.

Later that day, Appellant was taken to the Breckenridge Police Department to take a polygraph examination, which he voluntarily agreed to do. In the pre- and post-polygraph interviews, Appellant again stated that he was prevented from living with his wife in Cisco because of a city ordinance, and he explained that because of that, they had decided to make improvements to her home in order to sell it.

Appellant said in the interview that he and his wife had been going back and forth from Breckenridge to Cisco and that, by his understanding, he could go out of town for three days, but that if he was gone for over three days he had to report. However, Appellant later stated that he got sick, recovered, then became sick again, and therefore was "laid up" for three or four days in Cisco. Further, after his sickness, he then detoxed at his wife Linda's house in Cisco because he did not want to pay to go to a rehabilitation center. Appellant told the officers in his interview that, up until the detox, he was going back and forth from Cisco to Breckenridge every two or three days, but he admitted that he may not have been in 100% compliance during the past month. Specifically, Appellant said that, from March to April, he was in Cisco 70% of the time and admitted that he should not have been there.

As part of Agent Graham's additional investigation, he received Appellant's cell phone records. For one particular stretch of time, from March 28, 2018, to April 5, 2018, the records showed that Appellant's cell phone was active only in Cisco. Agent Graham testified that, based on his investigation, Appellant resided in Cisco for greater than a seven-day period without registering. Indeed, the Cisco Chief of Police testified that Appellant never registered an address in Cisco.

Andy Escobedo was a neighbor of Linda's in Cisco. He would see Appellant and Linda together often, for example, working on the yard or walking up and down the street. Escobedo would also see Appellant doing yard work for one of the local churches in the evenings, and Escobedo would see Appellant's truck parked at Linda's house when Escobedo would leave for work in the mornings. When Escobedo found out that Appellant was a registered sex offender, he began to do his own investigating and observed Appellant in the months before May 2018. Escobedo noticed that Appellant and Linda would arrive at Linda's house late at night in Appellant's truck and park in the parking area behind the house. In the mornings, Appellant's truck would still be there. Escobedo also took pictures of his observations during the day. He subsequently contacted the police.

An indictment was issued alleging a violation of a sex offender's duty to register (annually for life) under Article 62.102(b)(2) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(a), (b)(2) (West 2018). While Texas Code of Criminal Procedure Article 62.059 has registration requirements for persons regularly visiting a location and Article 62.055 has requirements for those changing address (rather than residence), the State did not proceed under those articles. *See* CRIM. PROC. arts. 62.055, .059. Rather, it specifically alleged that Appellant did not register "having resided in Cisco, Texas for more than 7 days." Having specified the narrow manner in which Appellant allegedly violated Chapter 62, the State was limited to the manner specified in the

4

indictment. *See Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) ("When a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, 'the law as authorized by the indictment' is limited to the method specified in the indictment." (quoting *Gollihar v. State*, 46 S.W.3d at 254–55 (Tex. Crim. App. 2001))). Accordingly, the indictment having so alleged, the State was required to prove that Appellant resided in Cisco, Texas, for more than seven days without registering. The seven-day requirement for change of residence in Chapter 62 is found in Article 62.051, which provides:

> A person who has a reportable conviction . . . shall register . . . with the local law enforcement authority . . . where the person resides or intends to reside for more than seven days. . . . The person shall satisfy the requirements of this subsection not later than the later of:
>
> (1) the seventh day after the person's arrival in the municipality . . . ; or
>
> (2) the first date the local enforcement authority . . . allows the person to register . . . .

CRIM. PROC. art. 62.051(a).

At the trial, the State presented the testimony of multiple witnesses but made its case primarily through evidence from Agent Graham, Escobedo, and the video interview of Appellant. That evidence also included Appellant's admission, a handwritten letter of apology penned by Appellant, in which Appellant stated that "[f]or a short time I didn't comply with my place of residence to the fullest."

Appellant's mother testified for the defense. She testified that in 2018 Appellant lived with her in Breckenridge and that, as far as she knew, he never changed his residence to Cisco. She also testified, however, that Appellant may have stayed the night with Linda in Cisco for a couple of nights. Appellant's daughter also testified that Appellant was living with his mother in 2018 and that he had

moved to the South Cutting address, but she had no knowledge of him moving to Cisco. She also stated that she saw Appellant doing work on Linda's house in Cisco, but she was of the understanding that they were going to sell the house.

Appellant's son also testified that Appellant worked on Linda's house to sell it. According to him, Appellant also worked construction jobs—mostly in Cisco. Yet, despite the fact that he would sometimes work jobs with his father and would sometimes travel to the jobs with him, he admitted on cross that he did not remember if he or Appellant would drive, what car Appellant drove, or if Linda ever rode with them.

Linda, Appellant's wife, also testified for the defense. She explained that she and Appellant had signed the papers for the home on South Cutting on March 28, 2018, but that the house "was a wreck." Further, the reason that they did not have many clothes in the RV on the day of the compliance check was because most of their belongings were still in Appellant's mother's house. Linda testified that Appellant did get sick on March 31, 2018, but insisted that Appellant did not stay at her house in Cisco for seven or more days while he was sick, but that they traveled back to Breckenridge every three days. She said that Appellant knew about his obligations regarding registration, but that his papers only said that he could be away from his registered address for three days.

The trial court subsequently found Appellant guilty of failing to register as a sex offender. Appellant filed a motion for new trial in which he complained of the vagueness of the statute and a failure to fairly and adequately give sufficient notice of the requirements of the statute cited in the indictment. There is no complaint in the motion of a failure to prove residence in Cisco, Texas, as Appellant complains of in appellate Issue One. During trial, however, in open court, Appellant made a motion for directed verdict and later reurged the motion based on the State's failure

to prove beyond a reasonable doubt that Appellant resided in Cisco, Texas, pursuant to the indictment.

## Discussion

**1. The evidence was sufficient to support Appellant's conviction for failure to register as a sex offender.**

In his first issue, Appellant claims that the evidence was insufficient to support his conviction.

### Standard of Review

"When determining whether the evidence is sufficient to support a criminal conviction, the only standard an appellate court should apply is the *Jackson v. Virginia* test for legal sufficiency." *Cary v. State*, 507 S.W.3d 761, 765–66 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *accord Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Accordingly, we must review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we

presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

*Analysis*

A person commits the offense of failure to comply with sex offender registration requirements if he "is required to register and fails to comply with any requirement of" Chapter 62 of the Code of Criminal Procedure. CRIM. PROC. art. 62.102(a); *see Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011) ("Article 62.102 is a generalized 'umbrella' statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62."); *see also Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The Court of Criminal Appeals has ruled that offenses under Article 62.102(a) are "circumstances of the conduct" types of offenses, with the circumstance being the duty to register. *Febus v. State*, 542 S.W. 3d 568, 573 (Tex. Crim. App. 2018). Thus, a culpable mental state is required only regarding the duty to register. *See Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015). In addition,

8

because the definition of "intent" does not contain a provision for the circumstances surrounding the conduct, the Court of Criminal Appeals has held that intent does not apply to offenses under Article 62.102(a). *See* TEX. PENAL CODE ANN. §§ 6.02, 6.03 (West 2021); *Robinson*, 466 S.W.3d at 172. Instead, "the culpable mental states of knowledge and recklessness apply only to the duty-to-register element" of Article 62.102's failure-to-comply offense. *Robinson*, 466 S.W.3d at 172.

The State was required to prove that Appellant *resided* in Cisco, Texas, for more than seven days without registering. The Code of Criminal Procedure does not define "reside" or explain what constitutes a "residence." When the legislature does not define the terms within a statute, we must apply their common, ordinary meaning unless a contrary meaning is apparent from the statute's language. *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012). The word "reside" or, less frequently used in the statute, "residence" does not appear to be used in lieu of "legal residence" or "permanent residence" but, rather, in the common and informal usage of a place of abode. In fact, when the statute in its entirety is read, where one resides may include, if it is not a single location with an address, "each geographical location at which the person resides or intends to reside." CRIM. PROC. art. 62.051(c)(1-a). It could also be "on the campus of a public or private institution," which would not be owned or permanent, and the statute includes a provision for registration of a place of "temporary residence." *Id.* art. 62.051(e), (h).

The use of the word "reside" in Article 62.051 is consistent with prior caselaw. In *Whitney v. State*, 472 S.W.2d 524, 525–26 (Tex. Crim. App. 1971), a case relied upon by Appellant, the Texas Court of Criminal Appeals held that:

> Residence may be temporary or permanent in nature. However, residence generally requires some condition greater than mere lodging. *Stadtmuller v. Miller*, 11 F.2d 732 (2nd Cir. 1926). The term implies a place of abode, albeit temporary, rather than a mere transient lodging….

While residence may be temporary, permanent or transient in character, or may be a fixed abode, depending on the purpose of the particular object of its use, *Switzerland Gen. Ins. Co. v. Gulf Ins. Co.*, 213 S.W.2d 161 (Tex. Civ. App.—Dallas, 1948 err. dismd.), we feel that the use of the term in the condition of probation required more than an overnight stay in a motel.

We simply cannot hold that a showing, without more, that a person has traveled to a distant city, spent one or two nights in a motel there, and expressed an intent to seek employment is sufficient to establish the fact that the person has made that locale his residence. Something further must be shown. Here, there was no showing of an intent to remain (the intent may, in fact, have been conditioned on finding employment), nor a showing that a former residence had been abandoned (such a showing is not mandatory, because one may have more than one residence, but it is of evidentiary value), nor a showing that appellant had established a place of abode . . . .

Accordingly, one may have more than one residence. A place of abode, as appears to be the home in Cisco—though not claimed by Appellant to be the sole abode—is evidence of residence.

We have reviewed *Whitehead v. State*, 556 S.W.2d 802, 805–06 (Tex. Crim. App. 1977), but that case is not based on a violation of the statute at issue in this matter. Rather, it is a revocation of probation matter for failure to abide by the terms thereof, including allegedly changing residence without permission of the probation officer. *Whitehead*, 556 S.W.2d at 805. The court's opinion in *Whitehead* is consistent with its prior holding in *Whitney* in its observation that "a stay of less than two weeks [at a cousin's house] is not, by itself, circumstantial evidence of an intention to create a new residence. While a lengthy stay or moving all of one's property could constitute circumstantial evidence of a change of residence, we have neither here." *Id.* at 806. Here, the home in Cisco is not that of a cousin, but of a spouse, and circumstantial evidence showed that Appellant frequently stayed

overnight in March and April 2018 and contributed his labors in order to obtain proceeds from the latter sale of same.

Appellant's reliance upon this court's decision in *Nikolaev v. State*, 474 S.W.3d 711, 713 (Tex. App.—Eastland 2014, pet. ref'd.), in support of this appellate issue is misplaced. In that case, Nikolaev worked as a truck driver, and he informed the Haskell County Sheriff's Office of his occupation when he completed his registration form. *Nikolaev*, 474 S.W.3d at 714. Although Nikolaev was frequently away from his registered residence due to work, the State presented no evidence showing that he had abandoned ownership or control of the residence. *Id.* The house was the only property he owned, and he was current on the payment of taxes on the property. *Id.* at 713. His occupation as a truck driver required him to be away from Haskell for long periods of time. Thus, he only stayed overnight at his house about twice a month. *Id.* Nikolaev said that he was an independent contractor and that he drove trucks that were leased temporarily from other parties. He explained that, because he never stayed in one place for more than a couple of days, he slept in each truck's overhead compartment during his cross-country trips. *Id. Nikolaev* is not therefore precedent that provides Appellant safe harbor. Here, while disputed, there are sufficient facts in support of the trial court's finding of guilt.

To sustain a failure-to-comply conviction, the State must present sufficient evidence to prove that the defendant "(1) knew or was reckless about whether the defendant had a duty to register as a sex offender, and (2) failed to comply with the Chapter 62 requirement the defendant allegedly violated." *Cloud v. State*, 579 S.W.3d 788, 790 (Tex. App—Houston [14th Dist.] 2019, no pet.). Here, in the indictment, the State alleged that Appellant failed to comply with the requirements of Chapter 62 of the Texas Code of Criminal Procedure in that he "fail[ed] to register with the local law enforcement authority in Cisco . . . while having a reportable

11

conviction . . . and having resided in Cisco, Texas for more than seven days." This comports with a violation of Article 62.051(a). *See* CRIM. PROC. art. 62.051(a) (requiring a person with a "reportable conviction" to "register or . . . verify registration . . . with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days").

Regarding the first element required for a conviction under Chapter 62, the State did present evidence that Appellant had knowledge of his duty to register as a sex offender and of the requirements of Chapter 62. For example, Agent Graham testified that as part of the compliance check, he discussed with Appellant all of his duties as a registered sex offender, including the duties in Article 62.051(a), and Agent Graham confirmed that Appellant understood these requirements. In addition, the trial court was aware that Appellant had been a registered sex offender subject to the requirements of Chapter 62 since 2011. It would be reasonable for the trial court to conclude that Appellant was well aware of his duties as he had been subject to those same duties for seven years at the time of the offense.

Turning now to the second element required for a Chapter 62 conviction, the State also presented evidence that Appellant was not in compliance with Article 62.051(a) and that Appellant knew he was not in compliance. The most notable evidence was that of Appellant's own statements. As previously stated, in his pre- and post-polygraph interviews with police, Appellant admitted that he was not in compliance with his duties; that he was "not living in the right place"; and that, in the month of April, he was in Cisco 70% of the time and that he should not have been there.

In addition, the State presented testimony through Escobedo, Linda's neighbor, that Appellant was at her house in Cisco "all the time" and that he would see Appellant's truck there late at night and then again early in the morning. The State also presented Appellant's phone records, which showed that for a nine-day

period, Appellant's cell phone was active solely in Cisco. Of course, Appellant presented conflicting evidence in the form of testimony from his mother, wife, and two children that he never resided more than seven days in Cisco. However, the trial court, as the finder of fact was entitled to weigh all of the evidence as it reasonably saw fit.

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey*, 393 S.W.3d at 768 (citing *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)); *see Jackson*, 443 U.S. at 318–19. The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey*, 393 S.W.3d at 768. The trier of fact may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), *overruled on other grounds by Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009). In conducting this review, we are not to reevaluate the weight and credibility of the evidence but must act only to ensure that the trier of fact reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). "[P]roof of a culpable mental state generally relies on circumstantial evidence." *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978); *Varnes v. State*, 63 S.W.3d 824, 833 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989) ("Establishment of culpable mental

states is almost invariably grounded upon inferences to be drawn by the factfinder from the attendant circumstances.").  Intent may be determined from a defendant's words, acts, and conduct, and "is a matter of fact to be determined from all of the circumstances." *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998).

Considered together, there was sufficient evidence for the court to find that Appellant had been residing in Cisco, Texas, for seven days, including but not limited to the following:

As a convicted sex offender, Appellant is required to register where he is living for life; Appellant told Trooper Graham during a sex offender compliance check that both he and his wife were living in the motor home at 1005 South Cutting in Breckenridge; Appellant had changed his registered address recently, which indicated that he was aware of his obligations to register; further, Appellant had initialed that he understood all the registration terms and conditions that he was required to comply with; his wife Linda had a home in Cisco, and Agent Graham found few sets of male clothing (three) and no female effects in the RV, which indicated to him that they were not in fact living in the motor home; Appellant then changed his story and said they were staying two days in the motor home and two days at the house in Cisco; Appellant volunteered to take a polygraph, and he again changed his story "stating that he had actually been staying at the place in Cisco"—he stayed for two weeks while he was sick with flu-like symptoms and two more weeks for sickness due to bad methamphetamine "so she could take care of him" (there was no explanation however of why she could not have done the same thing in the motor home residence rather than in Cisco); Appellant changed the story *again*, stating he was staying in Cisco 70% of the time and in Breckenridge 30% of the time (so predominantly he would be living in Cisco); Appellant did not change his registration to Cisco; Appellant understood that

there was a local ordinance that prevented him from living in his wife's house in Cisco—that ordinance in Cisco prevents Appellant as a sex offender from living in his wife's home because it is within 1,000 feet of an elementary school; Appellant did "admit to [Agent Graham] that he violated his sex offender registration requirements regarding where he was supposed to live"; in the opinion of Agent Graham, Appellant did not comply with his duty to register in Cisco as a sex offender; Appellant's handwritten apology letter was admitted as a trial exhibit; Escobedo, a neighbor who lived across the street, observed Appellant living at the Cisco address "all the time"; Escobedo would see Appellant's vehicle when he went to bed, and then the next morning it was still there when he got up; Escobedo observed what he said was "odd behavior" at the house in that Appellant and his wife would always park Appellant's vehicle in the rear of the house; Appellant's mother did not deny that Appellant spent nights in Cisco; the cell phone records of Appellant showed multiple days where calls were made only from Cisco (March 4, 9, 10, 13, 14, 15, 16, 20, 23, 28, 29, 30, and 31 and April 1, 2, 3, 4, 5, 7, 8, 9, 14, 15, and 16); Appellant admitted that he was not in compliance with his duties; and Appellant admitted that he was "not living in the right place."

Although contested, and although none of the evidence listed above may be conclusive, taken together it is sufficient.

Viewing the evidence in the light most favorable to the verdict, we find that there was sufficient evidence for the trial court to conclude that Appellant did reside in Cisco, Texas, for seven days or more and knowingly did not comply with his duty to register as a sex offender. Although the trier of fact is to resolve all conflicts, the resolution of conflicting evidence must be a rational one. *Muniz*, 851 S.W.2d at 246. Based on all the evidence, the trial court, as the finder of fact, resolved factual

conflicts on the issue of residency. The court's finding of guilt is a rational finding as required under *Brooks*, 323 S.W.3d 893. We overrule Appellant's first issue.

## 2. Appellant has not preserved his vagueness challenge for appellate review.

In his second issue, Appellant claims that the statute is unconstitutionally vague as applied to him.

*Standard of Review*

In a vagueness challenge where, as here, no First Amendment rights are involved, "we need only examine the statute to determine whether it is impermissibly vague as applied to the appellant's specific conduct." *Coronado v. State*, 148 S.W.3d 607, 609 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We presume that the statute is valid and that the legislature acted reasonably in enacting it. *Faust v. State*, 491 S.W.3d 733, 743–44 (Tex. Crim. App. 2015). We look at an appellant's conduct alone and then examine whether that conduct was clearly prohibited by the statute. *Cain v. State*, 855 S.W.2d 714, 718 (Tex. Crim. App. 1993). Appellant bears the burden of proving that Chapter 62 of the Texas Code of Criminal Procedure is unconstitutionally vague as applied to him; "that it might be unconstitutional as to others is not sufficient." *Id.*

*Analysis*

In general, to preserve error, a complaint must be made to the trial court by "a timely request, objection, or motion" stating the grounds for the desired ruling, and the trial court must either rule or refuse to rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a)(2). "Failure to object at trial may waive even constitutional errors." *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). Here, after both sides rested but before the trial court made its ruling on Appellant's guilt, defense counsel told the trial court that the statute should be declared vague as applied to Appellant. During its closing arguments, the State responded by stating

that defense counsel's argument for vagueness was untimely. Whether defense counsel's initial statement was a proper objection is of no consequence, as the trial court never ruled on the vagueness complaint. Appellant did not preserve error at that time, as pointed out by the State; however, Appellant included vagueness as a point in his motion for new trial. Thus, his second issue is properly before this court for review.

The motion for new trial makes no argument in support of the claim of vagueness. Further, Appellant's brief gives little attention to the issue of why and how the statute is unconstitutionally vague, and Appellant's reply brief gives none. Failure to brief, or to adequately brief, such a weighty issue by Appellant effects a waiver of that issue on appeal. *See* TEX. R. APP. P. 38.1(h); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000). Rule 38.1(h) requires both citation to authority and substantive analysis in regard to an issue. TEX. R. APP. P. 38.1(h). Failure to either cite authority or advance substantive analysis presents nothing for review on appeal. *Id.*

Even if the issue were not waived, based on this record we would be compelled to overrule Appellant's challenge to the subject statute. A statute is void for vagueness if (1) it does not provide a person of reasonable intelligence fair notice of what conduct is prohibited by statute or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Wagner v. State*, 539 S.W.3d 298, 313 (Tex. Crim. App. 2018) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). A statute is not unconstitutionally vague simply because words or terms are undefined; rather, "'the words or phrase must be read in the context in which they are used,' and ordinarily the statute must then be construed according to the rules of grammar and common usage." *Id.* at 314 (quoting *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989)). Indeed, "[w]e interpret a statute in accordance with the plain meaning of its words unless the words are ambiguous or

the plain meaning leads to an absurd result." *Reyes v. State*, 119 S.W.3d 844, 846 (Tex. App.—San Antonio 2003, no pet.).

As previously noted, the seven-day requirement for change of residence in Chapter 62 is found in Article 62.051, which provides:

> A person who has a reportable conviction . . . shall register . . . with the local law enforcement authority . . . where the person resides or intends to reside for more than seven days. . . .  The person shall satisfy the requirements of this subsection not later than the later of:
>
> (1) the seventh day after the person's arrival in the municipality . . . ; or
>
> (2) the first date the local enforcement authority . . . allows the person to register . . . .

CRIM. PROC. art. 62.051(a).  Chapter 62 provides clear direction on the proper mechanics of how to change registration and when and where to do it.  These requirements did not change depending on an address being in a flood plain and not being able to afford the insurance on it or learning that another address was in too close of a proximity to a school or a desire to work on a home in order to sell it or even the efforts to jump from home to home in order to maintain an appearance or nonappearance of residing there.

Appellant did not contest that he was in fact a person who was required to comply with the appropriate portions of Chapter 62.  Appellant understood well how to register in Breckenridge, Stephens County, Texas.  As discussed at length in conjunction with Appellant's first appellate issue, there is substantial evidence that Appellant understood his duties to register, that he principally resided in Cisco, Texas, during the March and April 2018 time period, and that he concealed his abode, even in the face of the known Cisco local ordinance prohibiting him from living within this proximity to an elementary school.  There is in the record Appellant's admission of noncompliance with regard to his failure to register in

Cisco, Texas. Looking at Appellant's actions in a light most favorable to the verdict, as by law we must, his actions show that factually he had no problem "understanding" the requirements of the statute.

In his brief, Appellant appears to argue that he was not aware that his conduct was prohibited by statute. However, based on this court's response to his first issue, the record reflects that, by Appellant's own admission, he had sufficient notice that his conduct was prohibited. Concerning the second half of the vagueness doctrine, Appellant makes the bald assertion in his brief, without supporting that argument, that "there is no clear procedure under the statute for registration at multiple, simultaneous residences." The evidence predominantly being that he lived principally in Cisco, there would be no need to register at multiple, simultaneous residences. His prior conduct in changing a registered residence reveals his understanding of how to do so. Further, while Appellant's thin assertion appears to be a tacit admission that in some circumstances multiple residences may indeed need to be registered, this does not at all address whether law enforcement under our facts had clear procedures to address Appellant's lack of registration for residing in Cisco, Texas.

On the contrary, the record reflects that the officers followed all of the required procedures of the statute, and we do not find where Appellant argues otherwise. Moreover, Chapter 62 is very specific about how authorities are to enforce its provisions. *See, e.g.*, CRIM. PROC. art. 62.052 (detailing how and when authorities are to inform sex offenders about the program, register offenders, and verify registration information); *see also Ex parte Mercado*, No. 14-02-00750-CR, 2003 WL 1738452, at *8–9 (Tex. App.—Houston [14th Dist.] Apr. 3, 2003, no pet.) (mem. op., not designated for publication) (stating that "[v]irtually nothing is delegated to policemen, judges, or juries regarding how" Chapter 62 is enforced). Appellant then has not met his burden to prove that the statute is unconstitutionally

vague as applied to him under the facts and circumstances presented. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


September 2, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Trotter, J.,
Williams, J., and Wright, S.C.J.[1]

Bailey, C.J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.